IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JOHNNY MIZE, ROBERT STEVEN PRITCHETT, AND DORA SMITH, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | 2:19-CV-7-Z-BR |
| BMW OF NORTH AMERICA, LLC, | § § § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Before the Court is Defendant BMW of North America, LLC's ("BMW") Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) or, In the Alternative, to Sever Plaintiffs' Claims Pursuant to Rules 20 and 21 ("Motion to Dismiss") (ECF 14), BMW's brief in support of its motion (ECF 15), Plaintiffs Ernesto Rivera ("Rivera")[1], Johnny Mize ("Mize"), Robert Pritchett ("Pritchett"), and Dora Smith's ("Smith") (collectively "Plaintiffs") response to the motion (ECF 22), and BMW's reply in support of its motion (ECF 25). The undersigned recommends the Motion to Dismiss be GRANTED in part and DENIED in part.

---

[1] BMW's Motion to Dismiss seeks dismissal of Rivera's claims. However, Rivera filed a Notice of Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A). (ECF 42). Rule 41(a)(1)(A)(i) states a plaintiff may dismiss his action without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment. "The notice of dismissal is self-effectuating and terminates the case in and of itself; no order or other action of the district court is required." *Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 291 (5th Cir. 2016) (internal quotation omitted); *see In re Amerijet Int'l, Inc.*, 785 F.3d 967, 973 (5th Cir. 2015). BMW has not filed an answer or motion for summary judgment, and the Motion to Dismiss is not an answer for purposes of Rule 41(a)(1). *See Carter v. United States*, 547 F.2d 258, 259 (5th Cir. 1977); *see also Bernard v. Deutsche Bank Nat'l Tr. Co.*, No. 3:13-CV-3902-G-BH, 2014 WL 12580464, at *1 (N.D. Tex. Aug. 18, 2014). Because Rivera's notice of voluntary dismissal is self-executing, the undersigned does not analyze Rivera's claims.

## I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiffs each purchased a BMW vehicle with a V8, twin-turbocharged engine, referred to as the "N63." (ECF 12 at 3–6, 8–9). BMW introduced the N63 in 2008 as a "high-performance engine…designed to be BMW's next generation V8." (*Id.* at 8). BMW placed the N63 in certain BMW 5 Series, 6 Series, 7 Series, X5, and X6 vehicles from 2009–2014. (*Id.*). Plaintiffs claim the N63 consumes excessive amounts of engine oil, requiring frequent oil changes and engine repairs, and that this alleged oil consumption defect has diminished the value of their vehicles. (*Id.* at 8, 17). Plaintiffs filed their initial Complaint against BMW and Bavarian Motor Works, BMW's parent company, on January 8, 2019. (*See* ECF 1). On February 6, 2019, BMW filed a Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) or, in the Alternative, to Sever Plaintiffs' Claims Pursuant to Rules 20 and 21 and brief in support. (ECF 9–10). On February 27, 2019, Plaintiffs filed their First Amended Complaint, which made substantially the same legal claims but listed BMW as the sole defendant and added factual allegations. (*See* ECF 12).

Plaintiffs' First Amended Complaint states: Johnny Mize leased a 2012 BMW 550i for three years beginning on July 3, 2012, made $36,210.47 in lease payments, and purchased the vehicle at the end of the lease for $42,000; Robert Pritchett purchased a 2013 BMW X5 on December 31, 2012 for $83,148.80; and Dora Smith purchased a 2012 BMW 7 Series 750i on December 27, 2013 for $85,746.12. (*Id.* at 3–6).

Plaintiffs' First Amended Complaint asserts the following claims: (1) breach of express and implied warranties under the Magnuson-Moss Warranty Act ("Magnuson Moss"), 15 U.S.C. § 2301, *et seq.*; (2) breach of implied warranty of merchantability under Magnuson Moss and Section 2.314 of the Texas Business and Commerce Code; (3) breach of express warranties under Section 2.313 of the Texas Business and Commerce Code; and (4) various violations of the Texas

Deceptive Practices Act ("DTPA"), Tex. Bus. & Com. Code § 17.41, *et seq.*[2] (*See* ECF 12 at 20–27). The First Amended Complaint states the Court has jurisdiction pursuant to Section 2310(d)(1)(B) of Magnus Moss because the amount in controversy exceeds $50,000, exclusive of interest and costs; diversity jurisdiction under 28 U.S.C. § 1332 because complete diversity of citizenship exists and the amount in controversy exceeds $75,000; and supplemental jurisdiction under 28 U.S.C. § 1367. (ECF 12 at 1–2).

On March 11, 2019, BMW filed its Motion to Dismiss and brief in support asserting substantially the same grounds for dismissal as asserted in its previous motion.[3] (*See* ECF 14–15). BMW argues Plaintiffs' claims must be dismissed under Federal Rule of Civil Procedure 12(b)(1) because: (1) Plaintiffs' alleged injuries do not meet the $50,000 or $75,000 thresholds required to confer jurisdiction under Magnuson Moss or 28 U.S.C. § 1332, respectively; and (2) with respect to Smith's claims, Smith lacks Article III standing because her injuries are speculative and neither concrete nor particular. (ECF 15 at 12). BMW argues Plaintiffs' claims must be dismissed under Federal Rule of Civil Procedure 12(b)(6) because: (1) the statutes of limitations on all of Plaintiffs' claims have run, and Plaintiffs do not adequately plead any exceptions to save their claims; and (2) even if not time-barred, Plaintiffs' claims must be dismissed because Plaintiffs fail to allege various essential elements of their claims. (*Id.*). Alternatively, BMW argues Plaintiffs' claims should be severed because they do not arise out of the same transaction or occurrence and each Plaintiff will face different questions of law and fact. (*Id.*).

---

[2] The undersigned addresses the claims in the order the parties' briefing addresses them.

[3] BMW's initial motion to dismiss (ECF 9–10) was denied as moot after the First Amended Complaint and Motion to Dismiss were filed. (*See* ECF 17, 21).

On April 22, 2019, Plaintiffs filed a Response. (ECF 22). On May 28, 2019, BMW filed a Reply. (ECF 25). The parties have filed multiple notices of supplemental authority, and BMW filed a response to two of Plaintiffs' notices. (*See* ECF 23–24, 27–34).

## II.    LEGAL STANDARD

Rule 12(b)(1) provides that a defendant may file a motion to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). In deciding a Rule 12(b)(1) motion to dismiss, the Court may consider:

> (1) the complaint alone;
>
> (2) the complaint supplemented by undisputed facts; or
>
> (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*King v. U.S. Dept. of Veteran's Affairs*, 728 F.3d 410, 413 (5th Cir. 2013) (quoting *Voluntary Purchasing Grps., Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010. Stated differently, the Court will grant a motion to dismiss for lack of subject matter jurisdiction only if it appears

4

certain that the plaintiff cannot prove a plausible set of facts to support a claim that would entitle it to relief. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

Rule 12(b)(6) provides that a defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a Rule 12(b)(6) motion to dismiss, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "However, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Ruiz v. Brennan*, 851 F.3d 464, n.5 (5th Cir. 2017) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 555–56, "Factual allegations must be enough to raise a right to relief above the speculative level . . .."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Additionally, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2)'s pleading standard does not require detailed factual allegations, but it demands more than labels

and conclusions. *See Iqbal*, 556 U.S. at 678. A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161. "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*. (citations omitted).

### III.   ANALYSIS

**A. BMW's Motion to Dismiss Plaintiffs' Claims under Rule 12(b)(1)**

BMW argues (1) Smith's claims must be dismissed because her injuries are speculative and neither concrete nor particular, thus she lacks Article III standing; and (2) Plaintiffs' claims must be dismissed under Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs' alleged injuries do not meet the $50,000 or $75,000 thresholds required to confer jurisdiction under Magnuson Moss or 28 U.S.C. § 1332, respectively. (ECF 15 at 12).

**i.   Article III Standing**

BMW argues for dismissal of Smith's claims due to lack of Article III standing because Smith alleges only that her vehicle may fail and that she will suffer loss in the future if she sells her vehicle. (*See id*. at 13–14). "The party invoking federal jurisdiction bears the burden of establishing that it has standing." *DeOtte v. Azar*, 332 F.R.D. 173, 179 (N.D. Tex. 2019) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)) (internal quotation omitted). The elements of Article III standing are: (1) an injury in fact that is concrete and particularized and

actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action; and (3) that it is likely that the injury will be redressed by a favorable decision. *Id*. (citing *Lujan*, 504 U.S. at 560–61).

The First Amended Complaint states Smith has suffered actual injuries stemming from BMW's conduct, including out-of-pocket expenses for extra engine oil and frequent oil changes (*see* ECF 12 at 7), loss in value of her vehicle (*see id*. at 17, 23), and loss of use and enjoyment (*see id*. at 23). Smith seeks economic damages for these alleged injuries. (*See id*. at 27). These allegations are sufficient to establish Smith's standing. *See Cole v. Gen. Motors Corp.*, 484 F.3d 717, 722–23 (5th Cir. 2007) (finding plaintiffs had standing despite the fact that the air bags in their vehicles never deployed inadvertently and stating "Plaintiffs seek recovery for their actual economic harm (e.g., overpayment, loss in value, or loss of usefulness) emanating from the loss of their benefit of the bargain . . . it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered.").

ii.    **Diversity Jurisdiction under 28 U.S.C. § 1332**

BMW argues Plaintiffs cannot establish diversity jurisdiction under 28 U.S.C. § 1332 because the amount in controversy does not exceed $75,000 with respect to each plaintiff. (ECF 15 at 15). The United States District Courts have subject matter jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1).

1.    **Diversity of Citizenship**

Subject matter jurisdiction exists under 28 U.S.C. § 1332 only when complete diversity of citizenship between the parties exists. *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014). The citizenship of a limited liability company ("LLC") is based on the citizenship of

the LLC's members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008); *Temple Drilling Co. v. La. Ins. Guar. Ass'n*, 946 F.2d 390, 393 (5th Cir. 1991). Plaintiffs' supplemental briefing establishes the parties are diverse. Plaintiffs are citizens of Texas. (*See* ECF 38-1 at 2–4). BMW is a citizen of Delaware and New Jersey. (*See* ECF 36 at 1).

### 2. Amount in Controversy

Generally, each plaintiff invoking jurisdiction under 28 U.S.C. § 1332 must separately allege damages that exceed $75,000. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1330 (5th Cir. 1995). An exception to this general rule exists in the limited situation when "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Id.* (quoting *Snyder v. Harris*, 394 U.S. 332, 335 (1969)). In that situation, the plaintiffs may aggregate their clams to meet the jurisdictional amount—but only after satisfying the court that their claims of right are "integrated," meaning they arise from the same legal source. *Id.* at 1331.

Plaintiffs' individual claims do not meet the aggregation standard for purposes of satisfying the amount in controversy requirement because they do not "unite to enforce a single title or right in which they have a common and undivided interest." *See id.* at 1330. Rather, each individual plaintiff has a right to recover independent of the remaining plaintiffs' recoveries. *See id.* at 1330–33. Thus, the amount in controversy with respect to each plaintiff must exceed $75,000.

"[T]he jurisdictional facts must be judged as of the time the complaint is filed." *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253–54 (5th Cir. 1998). "[W]hen a complaint does not allege a specific amount of damages, the party invoking federal jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount." *Id.* at 1253 (applying procedures developed in removal cases to case originally filed in federal court). "The district court must first examine the complaint to determine whether it is

'facially apparent' that the claims exceed the jurisdictional amount." *Id.* "If it is not thus apparent, the court may rely on 'summary judgment-type' evidence to ascertain the amount in controversy." *Id.*

Considering (1) Plaintiffs' statements in their initial Complaint that they claim "more than $50,000 in damages, exclusive of interest and costs;" (2) Plaintiffs' statements on their Civil Cover sheet that they seek $100,000 in damages; (3) Plaintiffs' claims that BMW intentionally violated the DTPA, which would entitle Plaintiffs to treble damages[4]; and (4) reasonable and necessary attorney's fees under the DTPA through trial[5], Plaintiffs have shown by a preponderance of the evidence that the amount in controversy exceeds $75,000 as to each plaintiff. (*See* ECF 1 at 1, 22; 1-1); *see also Wilson v. Hibu Inc.*, No. 3:13-CV-2012-L, 2013 WL 5803816, at *3–4 (N.D. Tex. Oct. 28, 2013) (applying "common-sense analysis" and concluding amount in controversy exceeded jurisdictional amount). The undersigned finds subject matter jurisdiction exists under 28 U.S.C. § 1332 because the parties are completely diverse, and Plaintiffs plausibly allege that they each satisfy the amount in controversy requirement. Therefore, the undersigned does not address whether it has jurisdiction over the action pursuant to Section 2310 of Magnuson Moss.

## B. BMW's Motion to Dismiss Plaintiffs' Claims under Rule 12(b)(6)

BMW requests the Court dismiss Plaintiffs' claims under Rule 12(b)(6), arguing Plaintiffs' claims are time-barred or, alternatively, that Plaintiffs failed to state a claim upon which relief can be granted. (*See* ECF 15 at 17–33).

---

[4] *See* Tex. Bus. & Com. Code § 17.45(13). If BMW intentionally violated the DTPA, Plaintiffs could recover up to three times the amount of economic damages sustained. *See id.* § 17.50(b)(1).

[5] *See* Tex. Bus. & Com. Code § 17.50(d); *see also Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) ("If a state statute provides for attorney's fees, such fees are included as part of the amount in controversy.") (internal citation omitted); *see also Watson v. Provident Life & Acc. Ins. Co.*, No. CIV.A. 3:08-CV-2065-G (BD), 2009 WL 1437823, at *5–6 (N.D. Tex. May 22, 2009) (including estimated attorney's fees through trial when calculating amount in controversy).

###### i.    Statute of Limitations

BMW argues all of Plaintiffs' claims must be dismissed under Rule 12(b)(6) because they are barred under the applicable statutes of limitations. (*See id*. at 18–19). The parties seem to agree that the applicable statutes of limitations are based on the underlying state law periods—four years for Plaintiffs' Magnuson Moss claims and breach of express and implied warranty claims under Sections 2.313 and 2.314 of the Texas Business and Commerce Code and two years for Plaintiffs' DTPA claims. (*See id*. at 18; 22 at 23). The parties disagree about whether Plaintiffs' claims were tolled. Plaintiffs assert four theories of tolling: (1) fraudulent concealment; (2) the discovery rule; (3) equitable estoppel; and (4) that the claims were tolled during the pendency of the *Bang* Class Action.[6] (*See* ECF 12 at 18–20).

"The affirmative defense of statute of limitations may be asserted in a Rule 12(b)(6) motion to dismiss." *O'Donnell v. Diaz*, No. 3:17-CV-1922-S, 2018 WL 3827617, at *1 (N.D. Tex. Aug. 9, 2018) (citing *Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773, 775 n.3 (5th Cir. 1997)). However, "dismissal should not be granted unless the defense is established by the face of the complaint." *Janvey v. Suarez*, 978 F. Supp. 2d 685, 702 (N.D. Tex. 2013) (internal quotation omitted). "With respect to the statute of limitations defense, dismissal at the 12(b)(6) stage is proper only 'where it is evident from the [complaint] that the action is barred and the [complaint] fail[s] to raise some basis for tolling.'" *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 351–52 (5th Cir. 2011) (quoting *Jones*, 339 F.3d at 366).

Plaintiffs' first three tolling arguments all rely on a common fact—BMW concealed the N63 engine issues from Plaintiffs, which prevented Plaintiffs from discovering BMW injured them. (*See* ECF 12 at 18–20); *see McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 241

---

[6] *See Bang v. BMW of N. Am.*, LLC, No. CV 15-6945, 2015 WL 5535800 (class action complaint filed September 18, 2015 against BMW alleging oil consumption defect in N63 engines).

F. Supp. 3d 737, 770 (N.D. Tex. 2017) (fraudulent concealment) (Under the doctrine of fraudulent concealment, the statute of limitations is tolled when a plaintiff shows: "'(1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant[']s use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception.'") (quoting *Vial v. Gas Sols., Ltd.*, 187 S.W.3d 220, 229 (Tex. App.—Texarkana 2006, no pet.)); *Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302, 312 (5th Cir. 2019) (the discovery rule) ("'The discovery rule is the legal principle which…provides that limitations run from the date the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury.'") (quoting *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988)); *Arizpe v. Principal Life Ins. Co.*, 398 F. Supp. 3d 27, 58–59 (N.D. Tex. 2019) (equitable estoppel) (citing *Vaughn v. Sturm-Hughes*, 937 S.W.2d 106, 108 (Tex. App.—Fort Worth 1996, writ denied) ("Equitable estoppel may bar a limitations defense when a party, his agent, or representative makes representations that induce a plaintiff to delay filing suit until the limitations period has run.")).

Plaintiffs pleaded several facts in support of their first three tolling arguments. BMW knew about the N63 engine issues as early as 2008. (*See* ECF 12 at 10–14, 16, 18, 25). Despite this knowledge, BMW manufactured and placed into the stream of commerce vehicles with N63 engines, including the vehicles at issue, which Plaintiffs subsequently purchased. (*See id.* at 7–9). Plaintiffs expressed concerns to BMW consistent with the known defect. (*See id.* at 3–7). In response, BMW made representations that led Plaintiffs to believe no problem existed.[7] (*See id.*). BMW interfered with owners' ability to discover the alleged oil consumption defect and increased

---

[7] BMW argues Plaintiffs' fraudulent concealment theory of tolling fails because Plaintiffs were required to plead facts showing BMW owed a duty to disclose, but failed to do so. (*See* ECF 15 at 19–20). The undersigned disagrees. Under Texas law, affirmative misrepresentations may support a fraudulent concealment theory of tolling—even in the absence of a duty to disclose. *See McKinney/Pearl Rest. Partners, L.P.*, 241 F. Supp. 3d at 770–71.

the risk of damage to the vehicle in doing so. (*See id*. at 12). Assuming it is evident from the First Amended Complaint that Plaintiffs' claims are barred, the First Amended Complaint alleges a plausible set of facts that would entitle Plaintiffs to tolling of the statute of limitations. *See Jaso*, 435 F. App'x at 351–52.[8]

With respect to Plaintiffs' class action tolling theory, the Court finds the First Amended Complaint fails to allege a plausible set of facts that would entitle Plaintiffs to class action tolling. "*American Pipe* provides that the filing of a class action suspends the applicable statute of limitations as to all putative class members until either class certification is denied or until the individual member ceases to be a member of the class—a phenomenon commonly known as *American Pipe* tolling." *In re BP p.l.c. Sec. Litig.*, 51 F. Supp. 3d 693, 699 (S.D. Tex. 2014) (citing *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 552–54 (1974)).

The First Amended Complaint states the *Bang* Class Action was filed on September 18, 2015, but does not identify when Plaintiffs opted out of the *Bang* class action and tolling ceased. (*See* ECF 12 at 20; 12-1). The undersigned acknowledges that Plaintiffs' briefing identifies the dates each Plaintiff opted out (*see* ECF 22 at 23), but declines to consider these facts at the 12(b)(6) stage where the Court can only consider the pleadings and anything attached to or specifically referenced by the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also*

---

[8] BMW argues Plaintiffs failed to sufficiently plead their fraudulent concealment theory of tolling under Federal Rule of Civil Procedure 9(b)'s ("Rule 9(b)") heightened pleading standard. (*See* ECF 15 at 20–24). However, BMW cites only to one authority—from the Southern District of Texas—to support its argument. (*See id*. at 20, n.40) (citing *S.E.C. v. Jackson*, 908 F. Supp. 2d 834, 868 (S.D. Tex. 2012) (stating allegations of fraudulent concealment must satisfy Rule 9(b))). The undersigned need not analyze this issue. Even under Rule 9(b), Plaintiffs have raised some basis for tolling. For example, Plaintiffs specifically pleaded that in June 2013 BMW issued a technical service bulletin instructing service technicians at dealerships to add two quarts of engine oil to vehicles, instead of the recommended one quart, in order to reduce the number of complaints and conceal the alleged oil consumption defect. (*See* ECF 12 at 11–14). Additionally, Plaintiffs specifically pleaded that BMW launched a "Customer Care Package" on December 29, 2014 to conceal the alleged defect by instructing service technicians to check for additional issues at service intervals, which reduced the time between recommended servicing and tended to conceal that the vehicles could not go as long between oil changes as originally promised. (*See id*.). These allegations are sufficient to state the date, place, and content of the misrepresentations, as well as the identity of the speaker and what it obtained thereby. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

*In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. Additionally, it is unclear in the Fifth Circuit whether a federal class action tolls the state statute of limitations for individual state law claims. *See Newby v. Enron Corp.*, 542 F.3d 463, 471–72 (5th Cir. 2008); *see In re BP p.l.c. Sec. Litig.*, 51 F. Supp. 3d at 699–700.

### ii.   Plaintiffs' Breach of Express Warranty Claims

BMW argues Plaintiffs' breach of express warranty claims under Section 2.313 of the Texas Business and Commerce Code must be dismissed under Rule 12(b)(6) because Plaintiffs do not allege (1) BMW failed to comply with any express warranties, or (2) that their vehicles are under warranty. (*See* ECF 15 at 27–29). Under Texas law, the elements of a cause of action for breach of express warranty are:

> (1) the defendant-seller made an express affirmation of fact or promise relating to the goods; (2) that affirmation or promise became part of the bargain; (3) the plaintiff relied upon that affirmation or promise; (4) the goods did not comply with the affirmation or promise; (5) the plaintiff was damaged by the noncompliance; and (6) the failure of the product to comply was the proximate cause of the plaintiff's injury.

*Cerber Prop. sp. z.o.o. S.K.A. v. Tex. Instruments Inc.*, No. 3:18-CV-0992-S, 2019 WL 1432925, at *2 (N.D. Tex. Mar. 28, 2019) (quoting *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 815 (S.D. Tex. 2013)); *see* Tex. Bus. & Com. Code § 2.313.

Plaintiffs pleaded several facts in support of their breach of express warranty claims. BMW provided each plaintiff a written warranty, which warranted that BMW would repair or replace components found to be defective in material or workmanship for 48 months or 50,000 miles and that its dealers assented to perform warranty repairs. (*See* ECF 12 at 7–8, 22). BMW's warranties became part of the bargain as to each plaintiff, and Plaintiffs relied on BMW's warranties. (*See id.* at 22). Plaintiffs each provided BMW with notice of the defect and a reasonable opportunity to repair it when they presented their vehicles to BMW-authorized dealerships *during the warranty*

*period* and sought repairs in accordance with BMW's written warranty. (*See id*. at 3–6). BMW breached its warranty when, having been given an opportunity to repair the vehicles, it refused or failed to do so. (*See id*. at 3–7). Plaintiffs pleaded damages as a result of the breach, including economic losses arising from the diminished value of the vehicles, Plaintiffs' overpayment for the cars, and Plaintiffs' incidental and consequential damages, including out-of-pocket costs, arising out of BMW's failure to repair the defective N63 engines in Plaintiffs' vehicles. (*See id*. at 3, 5–7, 17–18, 23). These allegations satisfy Plaintiffs' pleading requirements.

BMW nonetheless argues that Smith's claim fails because she has not pleaded any actual loss. (*See* ECF 15 at 26). BMW cites authority discussing whether an injury is "concrete" or "manifest" and considering whether there was evidence of injury at the summary judgment stage. (*See id*. at 26, n.56). The undersigned disagrees. As previously stated, the First Amended Complaint states Smith suffered actual injuries stemming from BMW's conduct (i.e. out-of-pocket expenses for extra engine oil and frequent oil changes (*see* ECF 12 at 7), loss in value of her vehicle (*see id*. at 17, 23), and loss of use and enjoyment (*see id*. at 23)), for which she seeks economic damages. (*See id*. at 27).

### iii.    Plaintiffs' Breach of Implied Warranty Claims

BMW argues Plaintiffs' breach of implied warranty claims under Section 2.314 of the Texas Business and Commerce Code must be dismissed because Plaintiffs fail to specify how the vehicles were not merchantable. (*See* ECF 15 at 29–31). "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Tex. Bus. & Com. Code § 2.314. To succeed on a breach of implied warranty claim, Plaintiffs must show (1) that a defect caused the vehicle to be unfit for its ordinary purpose; (2) that the alleged defect existed when the vehicle left the manufacturer's and the seller's possession;

and (3) that the alleged defect proximately caused the injuries for which the plaintiff seeks damages. *Everett v. TK-Taito, LLC*, 178 S.W.3d 844, 853 (Tex. App.—Fort Worth 2005, no pet.).

"'The ordinary purpose of an automobile is to provide transportation.'" *Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 685 (N.D. Tex. 2006) (quoting *Chandler v. Gene Messer Ford, Inc.*, 81 S.W.3d 493, 503 (Tex. App.—Eastland 2002, pet. denied)). "As applied to cars, 'the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects [and, therefore,] where a car can provide safe, reliable transportation[,] it is generally considered merchantable.'" *Bang v. BMW of N. Am., LLC*, No. CV 15-6945, 2016 WL 7042071, at *7 (D.N.J. Dec. 1, 2016) (quoting *Henderson v. Volvo Cars of N. Am.*, LLC, No. CIV. 09-4146 (DMC), 2010 WL 2925913, at *9 (D.N.J. July 21, 2010)); *see Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989).

Plaintiffs' First Amended Complaint alleges a plausible set of facts showing how the vehicles were not merchantable. The alleged oil consumption defect caused the vehicles to consume an excessive amount of engine oil, which required Plaintiffs to regularly add additional engine oil to their vehicles in between BMW's recommended oil change intervals to prevent catastrophic failure of their vehicles' N63 engines and life-threatening accidents. (*See* ECF 12 at 8, 17). The alleged oil consumption defect rendered the vehicles unfit for their ordinary purpose of transportation. (*See id*. at 21–22). The alleged oil consumption defect existed when the vehicle left BMW's and the dealerships' possession. (*See id*. at 7–8). These allegations satisfy Plaintiffs' pleading requirements.

### iv.    Plaintiffs' Magnuson Moss Claims

BMW argues Plaintiffs' Magnuson Moss claims must be dismissed because "Plaintiffs have failed to state a viable state law claim for breach of express warranty or breach of implied

warranty." (ECF 15 at 31). As stated above, the undersigned finds Plaintiffs have satisfied their pleading requirements with respect to their breach of express and implied warranty claims.

   v.   **Plaintiffs' DTPA Claims**

   BMW argues (1) Smith's DTPA claims must be dismissed because Smith purchased a used vehicle, and DTPA claims are not assignable; and (2) Plaintiffs' DTPA claims regarding BMW's alleged misrepresentations fail for lack of specificity. (*See id*. at 32–33).

   In support of its first argument as to Smith's DTPA claims, BMW cites three cases to show Smith cannot sue under the DTPA because she bought a used vehicle. (*See id*. at 32–33). These three cases confirm that the "DTPA grants consumers a cause of action only for conduct by the defendant occurring in connection with a consumer's transaction in goods or services." *Berger v. Flores*, No. 03-12-00415-CV, 2015 WL 3654555, *6 (Tex. App.—Austin 2015, no pet.) (citing Tex. Bus. & Com. Code § 17.50(a)(1)); *see PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*, 146 S.W.3d 79, 92 (Tex. 2004); *see Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649–650 (Tex. 1996).

   In *PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*, the Texas Supreme Court noted the Texas Business and Commerce Code "expressly provides that warranty claims are assignable, while the DTPA says nothing about assignment." *PPG Indus., Inc.*, 146 S.W.3d at 84. The court further noted its holding in *Nobility Homes of Texas, Inc. v. Shivers*, where it "held a downstream purchaser of a mobile home could bring implied warranty claims directly against a remote manufacturer, even though there was no privity of contract between them." *Id*. at 88 (citing *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 81 (Tex. 1977)). However, in *Amstadt v. U.S. Brass Corp.*, the court "held downstream purchasers of non-mobile homes could not bring DTPA claims against remote manufacturers and suppliers of a defective plumbing system, because

16

the deceptive acts alleged were not committed against or communicated to them in connection with their own purchases." *Id*. (citing *Amstadt*, 919 S.W.2d at 649–50).

The Texas Supreme Court ultimately held DTPA claims are generally not assignable, and "[a subsequent buyer] acquire[s] no DTPA claims merely by becoming a subsequent owner of [goods]." *See id*. at 86–87, 91–92. Downstream purchasers of goods may only bring DTPA claims against remote manufacturers or sellers when the alleged deceptive acts were "committed against or communicated to them in connection with their own purchases." *See id*. at 88. For example, "if manufacturers make representations or warranties directly to consumers, the latter may sue directly (despite the absence of privity) for breach of express warranty or violation of the DTPA." *Id*. at 90.

With respect to Smith's breach of express warranty claims, Smith pleaded that she bought her used BMW vehicle from Arlington BMW, an authorized dealer of BMW, and that BMW provided her a Certified Pre-Owned Warranty in connection with the sale of the vehicle. (*See* ECF 12 at 6, 22); *see PPG Indus., Inc.*, 146 S.W.3d at 90. With respect to Smith's breach of implied warranty claims, Smith pleaded that BMW was connected to the sale of her vehicle because she bought the vehicle from an authorized dealer of BMW, BMW provided her with a Certified Pre-Owned Warranty when she purchased the vehicle, BMW controlled the execution of all warranty repairs by authorized dealers, authorized dealers are BMW's agent for purposes of warranty repairs, and BMW instructed service technicians to service vehicles in a way that concealed the alleged defect. (*See* ECF 12 at 6–8, 12, 22). With respect to Smith's DTPA claims based on misrepresentations and unconscionable conduct, Smith pleaded BMW made misrepresentations directly to her, and that BMW's conduct constituted unconscionable conduct. (*See id*. at 24–26). Based on the undersigned's understanding of the cases discussed above, and comparing Smith's

17

transaction with the transactions at issue in the cases above, Smith has alleged a plausible set of facts showing a connection between BMW's alleged conduct and the sale of Smith's vehicle.

BMW's second argument as to Plaintiffs' DTPA claims is that BMW's alleged misrepresentations fail for lack of specificity. (*See* ECF 15 at 32–33). "Claims alleging violations of the DTPA are subject to the requirements of Rule 9(b)." *Patel v. Holiday Hosp. Franchising, Inc.*, 172 F. Supp. 2d 821, 825 (N.D. Tex. 2001). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc.*, 343 F.3d at 724 (internal quotation omitted).

Plaintiffs have not sufficiently pleaded their misrepresentation claims under the DTPA and Rule 9(b). For example, the First Amended Complaint alleges that BMW, through its authorized dealers, falsely claimed that the excessive engine oil consumption was actually normal and not the product of a defect. (*See* ECF 12 at 3–8). However, the First Amended Complaint does not identify when the misrepresentations were made as Rule 9(b) requires. *See Benchmark Elecs., Inc.*, 343 F.3d at 724.[9] The undersigned recommends Plaintiffs' misrepresentation claims under the DTPA be <u>dismissed without prejudice to refiling.</u>

### C.  BMW's Motion to Sever Plaintiffs' Claims

Finally, BMW argues that the Court should sever Plaintiffs' claims because they do not arise from the same transaction or occurrence and each plaintiff will present different questions of law and fact. (*See* ECF 15 at 33). Federal Rule of Civil Procedure 20, which provides for permissive joinder of parties, states:

> Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same

---

[9] By singling out this group of alleged misrepresentations, the undersigned is not suggesting that this is the only defect in the First Amended Complaint with respect to Plaintiffs' misrepresentation claims under the DTPA.

transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1)(A)–(B). "[A] trial court has broad discretion to sever." *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000).

The undersigned finds permissive joinder appropriate. Plaintiffs seek relief arising out of the same transactions or occurrences. *See Loy v. BMW of N. Am., LLC*, No. 4:19-CV-00184 JAR, 2019 WL 6250844, at *4–5 (E.D. Mo. Nov. 22, 2019); *see also Harris v. BMW of N. Am., LLC*, No. 4:19-CV-00016, 2019 WL 4861379, at *4 (E.D. Tex. Oct. 2, 2019); *see also Schneider v. BMW of N. Am., LLC*, No. 18-CV-12239-IT, 2019 WL 4771567, at 4–5 (D. Mass. Sept. 27, 2019). Plaintiffs' claims all stem from BMW's use of allegedly defective N63 engines and refusal or failure to repair Plaintiffs' vehicles in violation of its warranties. (*See* ECF 12 at 3–9). Plaintiffs have the same allegedly defective N63 engine in their vehicles and have all experienced excessive engine oil consumption as a result. (*See id*.). Plaintiffs were all issued express warranties by BMW covering their vehicles. (*See id*. at 7–8, 22). In each case, BMW's authorized dealers told Plaintiffs the excessive engine oil consumption did not warrant any repairs and failed to repair the vehicles. (*See id*. at 3–7). As discussed in the undersigned's Findings, Conclusions, and Recommendation, Plaintiffs' claims also share common questions of law and fact, including (1) whether defects in the N63 engines resulted in excessive oil consumption; (2) whether and when BMW became aware of the defect in the N63 engines; (3) how BMW instructed its authorized dealerships to address complaints of oil consumption; and (4) whether BMW deliberately concealed the defect from Plaintiffs. The undersigned recommends BMW's request to sever Plaintiffs' claims be denied.

## IV.    RECOMMENDATION

For the above reasons, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that BMW's Motion to Dismiss (ECF 14) be (1)

GRANTED in part with respect to Plaintiffs' misrepresentation claims under the DTPA; and (2) DENIED in part with respect to all other claims. This District generally allows plaintiffs at least one opportunity to cure pleading deficiencies if such deficiencies may be cured through amendment. *See Wilson v. Deutsche Bank Tr. Co. Americas as Tr. for Residential Accredit Loans, Inc.*, No. 3:18-CV-0854-D, 2019 WL 175078, at *8 (N.D. Tex. Jan. 10, 2019). The undersigned acknowledges that Plaintiffs have already amended their Complaint (*See* ECF 12), and thus have had an opportunity to cure any pleading deficiencies. However, as this is the first time the Court has analyzed Plaintiffs' pleadings, the undersigned recommends Plaintiffs' misrepresentation claims under the DTPA be <u>dismissed without prejudice to refiling</u>.

## V.    INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED January 31, 2020.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's

failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), as recognized in *ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).