IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JOHNNY MIZE, ROBERT STEVEN PRITCHETT, AND DORA SMITH, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | 2:19-CV-007-Z-BR |
| BMW OF NORTH AMERICA, LLC, | § § § | |
| Defendant. | § § | |

**ORDER ON MAGISTRATE JUDGE'S FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

On January 31, 2020, the United States Magistrate Judge entered findings and conclusions on Defendant BMW of North America, LLC's ("BMW") Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) or, In the Alternative, to Sever Plaintiffs' Claims Pursuant to Rules 20 and 21 ("Motion to Dismiss") (ECF No. 14). The Magistrate Judge recommends that BMW's motion be GRANTED in part and DENIED in part.

BMW filed objections to the findings, conclusions, and recommendation ("FCR") on February 14, 2020. ECF No. 44. Plaintiffs filed a response on February 28, 2020. ECF No. 45. After making an independent review of the pleadings, files, and records in this case, the FCR, and BMW's objections, the Court concludes that the findings and conclusions are correct in part. It is therefore ORDERED that the findings, conclusions, and recommendation (ECF No. 43) are ADOPTED in part and that BMW's Motion to Dismiss (ECF No. 14) is GRANTED in part and DENIED in part, as further explained below.

## I.  LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*; *see also Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012). While a Rule 12(b)(1) motion to dismiss is a proper vehicle used to assert the court's lack of subject matter jurisdiction over a civil action or claim, subject matter jurisdiction may be raised at any time. *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1156–57 (5th Cir. Unit B March 1981); s*ee* FED. R. CIV. P. 12(b)(1).

A Rule 12(b)(1) motion to dismiss is considered before addressing the merits of a case, such as motions under Rule 12(b)(6) or summary judgment. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). "Considering Rule 12(b)(1) motions first prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Lester v. Lester*, 3:06-CV-1357-BH, 2009 WL 3573530, at *3 (N.D. Tex. Oct. 29, 2009) (internal marks omitted) (quoting *Ramming*, 281 F.3d at 161). This Court evaluates the pleadings and BMW's Motion to Dismiss by the same legal standard employed in the FCR. *See* ECF No. 43 at 4–6. This section only further supplements the legal standard as stated in the FCR. *Id.*

## II.  FINDINGS, CONCLUSIONS, AND RECOMMENDATION

BMW seeks to dismiss Plaintiffs' claims under three umbrellas of law: first, that this Court lacks subject matter jurisdiction under Rule 12(b)(1); second, that Plaintiffs failed to state a claim upon which relief can be granted under Rule 12(b)(6); and third, that Plaintiffs claims should be severed and dismissed under Rules 20 and 21. *See* ECF No. 14. This Court will only address BMW's objections to the FCR that are timely. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §

636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988). Further, while BMW's Motion to Dismiss includes both Rule 12(b)(1) and Rule 12(b)(6) claims, the Court will treat each motion separately and will not consider the arguments or findings under Rule 12(b)(6) in its determination of subject matter jurisdiction under Rule 12(b)(1). *See Ramming*, 281 F.3d at 161.

### A. BMW's Motion to Dismiss Plaintiff's Claims under Rule 12(b)(1)

BMW objects to the finding that this Court has subject matter jurisdiction over this case.[1] BMW argues that the Magistrate Judge "incorrectly found that Plaintiffs' allegations with respect to their individual direct damages arising from the alleged defect are sufficient to confer jurisdiction under Magnuson-Moss or 28 U.S.C. § 1332." ECF No. 44 at 2. However, the Magistrate Judge found that diversity jurisdiction exists under 28 U.S.C. § 1332, and therefore did not address jurisdiction arising under the Magnuson-Moss Warranty Act ("Mag-Moss"). ECF No. 43 at 9; 15 U.S.C. § 2301, *et seq*. Nonetheless, in an abundance of caution, the Court will address jurisdiction under both statutes.

### i. Diversity Jurisdiction

The Magistrate Judge found that "subject matter jurisdiction exists under 28 U.S.C. § 1332 because the parties are completely diverse, and Plaintiffs plausibly allege that they each satisfy the amount in controversy requirement." *Id.* BMW does not dispute diversity of citizenship,[2] but rather aims its objection at the target amounts in controversy. ECF No. 44 at 2–8. BMW launches six

---

[1] The Magistrate Judge found that Plaintiff Smith's allegations are sufficient to establish Article III standing. ECF No. 43 at 6–7. BMW failed to file any objections to this finding. The Court agrees with the FCR on the issue of Smith's Article III standing and finds no existence of plain error. Accordingly, the Court will not further address this issue.

[2] There is no evidence for the Court to that Plaintiffs are not Texans. However, even after two orders to *properly* allege citizenship, Plaintiffs' citizenship analysis—that they live in Texas and, therefore, are citizens of Texas—is hardly proper to determine diversity of citizenship. Location and length of residence in Texas are of little use in the first step of the citizenship analysis: establishing whether the person is a *citizen of the United States*. Rather, however long Plaintiffs have lived in Texas matters for establishing the citizen's *domicile*—which has no bearing until national citizenship is first established. *See* 28 U.S.C. § 1332. After all, one could have resided in Texas for the past four decades and still be a citizen of a foreign country.

arguments in support of dismissing this case for lack of subject matter jurisdiction. *Id.* After analyzing all six arguments as discussed below, the Magistrate Judge correctly concluded that this Court has subject matter jurisdiction arising under diversity jurisdiction. Accordingly, the Court ADOPTS in part the FCR and, where applicable, supplements it with the following analysis and findings.

### 1. *Conclusory Allegations*

In its first objection, BMW argues that the FCR incorrectly relies on conclusory allegations from the Amended Complaint. ECF No. 44 at 3. BMW objects to the allegations that "the Plaintiffs claim more than $50,000.00 in damages, exclusive of interest and costs . . ." under Mag-Moss and "more than $75,000.00 in damages" under 28 U.S.C. § 1332—the diversity jurisdiction statute. *Id.*; ECF No. 12 ¶ 3. Attacking whether it is "facially apparent"[3] that the amount in controversy is met, BMW argues that both these allegations are conclusory and should be disregarded by the Court.[4] ECF No. 44 at 3, n.7. Thus, the Court must decide whether these allegations of damages are conclusory.

In support of its argument, BMW cites to the rule exhibited in *Taylor v. Books A Million, Inc.*, that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 296 F.3d 376, 378 (5th Cir. 2002) (citations omitted).

---

[3] While BMW fails to cite any case law to support the "facially apparent" standard, this Court notes that the standard particularly applies to Texas state court cases *removed* to federal court under 28 U.S.C. §1441 because of the state court pleading requirements. *See St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

[4] BMW points to *Alam v. BMW of N. Am., LLC*, which recommended a finding that the plaintiffs did not offer specific allegations or evidence regarding damages for purposes of the amount in controversy. 1:19-CV-22-LY, 2019 WL 5847852, at *3 (W.D. Tex. Nov. 7, 2019). However, this Court disagrees with the analysis used in *Alam* as applied here. *Alam* relies on *Scarlott v. Nissan North America, LLC*, 771 F.3d 888, 889 (5th Cir. 2014) which is distinguishable from this case. In *Scarlott*, the civil action was *removed* from state court and the amended complaint demanded an amount *less than* the jurisdictional threshold. The defendant could not show any specifically alleged damages to contradict plaintiffs "less than" jurisdictional statement in order to establish the amount in controversy. *Id.* In contrast, here, Plaintiffs' action was initially filed in federal court and did include a specific amount in the Amended Complaint—an amount *greater than* the jurisdictional thresholds of $50,000.00, and $75,000.00. ECF No. 12 ¶¶ 3–4. As such, because the procedural history and facts differ, so too does the analysis.

4

However, BMW fails to include the full analysis in Court's determination of whether or not an allegation is conclusory.

Expounded in the Supreme Court's landmark decisions, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court held that a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Once the party invoking jurisdiction alleges "sufficient factual matter" to establish jurisdiction, a Rule 12(b)(1) motion should be granted only if it appears to a "legal certainty" that the claimant cannot prove any set of facts in support of its claim that would entitle the claimant to relief. *Ruiz v. Donahue*, 569 Fed. Appx. 207, 210 (5th Cir. 2014) (per curiam) (quoting *Ramming*, 281 F.3d at 161). "It has long been recognized that unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Reinsurance Co.*, 134 F.3d at 1253 (internal marks omitted). Here, Plaintiffs claim sums that exceed the amount in controversy thresholds under both Mag-Moss and the diversity statute. ECF No. 12 ¶¶ 3–4. Because these sums control, the Court will expand on the findings of "sufficient factual matter" to determine whether the allegations are indeed "conclusory."

First, the Court notes that each of the luxury vehicles were purchased for an amount exceeding both $50,000 and $75,000: $78,210.47 (*Mize*), $83,148.80 (*Pritchett*), $85,746.12 (*Smith*). ECF No. 12 ¶¶ 18, 19, 28, 36. While these amounts are certainly not the present value of the vehicles, the high purchase prices and the allegations that the engines in these high-powered, luxury vehicles are dangerously defective only further establishes "sufficient factual matter." *See e.g.*, *Lee v. BMW of N. Am., LLC*, SACV1901722JVSADSX, 2019 WL 6838911, at *3 (C.D. Cal. Dec. 16, 2019) (finding the amount in controversy was "facially apparent" when BMW removed the action to federal court because (1) the vehicle was purchased for approximately $101,000, and

(2) plaintiffs sought reimbursement or refund of the total purchase price, plus two times total amount in civil penalties, as noted in the prayer for relief).

Second, Plaintiffs allege they suffered damages from excessive diminution in value, lost use of enjoyment, and incidental and consequential damages. ECF No. 12 ¶¶ 24–25, 29, 32–33, 37, 40, 87, 127–128. While the Court cannot determine the exact dollar amounts at this stage, it is not required to do so. "There is no requirement in the Fifth Circuit . . . that an actual dollar amount must appear on a paper in the suit." *McCabe v. Ford Motor Co.*, CIV. A. No. 1:10-CV-98, 2010 WL 2545513, at *5 (E.D. Tex. June 21, 2010) (internal marks omitted) (citing *Century Assets Corp., LLC v. Solow*, 88 F. Supp. 2d 659, 661 (E.D. Tex. 2000) (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1410–13 (5th Cir. 1995)).

Third, looking to the nature of the claims and the alleged background facts—and before conducting any analysis on BMW's Rule 12(b)(6) motion to dismiss—Plaintiffs allege they are entitled to treble damages and attorneys' fees under the DTPA. ECF No. 12 ¶¶ 26–27; *See* Tex. Bus. & Com. Code Ann. §§ 17.45; 17.50. Further, Plaintiffs seek equitable relief in the form of specific performance to replace the subject vehicles with new ones, or to repair the vehicles with an extension of the express and implied warranties, and service contracts. ECF No. 12 ¶ 27.

Although Plaintiffs may not have engaged in "best practices" in pleading the amount in controversy for each plaintiff, the Court finds that the amounts stated in the "jurisdiction" sections of the Amended Complaint are supported by sufficient factual matter to preclude them from being "conclusory."[5] Therefore, to prevail on its Rule 12(b)(1) motion to dismiss, BMW must prove to

---

[5] *Compare Hereford v. Carlton*, 9:15-CV-26, 2016 WL 7042231 (E.D. Tex. May 26, 2016) (finding a statement seeking damages in excess of $75,000 was not conclusory applying a "common sense" analysis when looking to complaint as a whole, the nature of damages sought and claims asserted, and alleged background facts) *with Tesoro Ref. & Mktg. Co. LLC v. C.A.R. Enterprises, Inc.*, SA-18-CV-820-XR, 2018 WL 6050603 (W.D. Tex. Nov. 19, 2018) (finding jurisdictional statement was conclusory where plaintiff failed to monetize the object of litigation or provide any information as to its value).

a legal certainty that Plaintiffs cannot prove any set of facts in support of their claims that would entitle them to relief. *Ramming*, 281 F.3d at 161.

## 2. *Amount in the Civil Cover Sheet*

BMW next argues that the FCR improperly included Plaintiff's Civil Cover Sheet in its determination of the Amount in Controversy. ECF No. 44 at 4. While both parties cite mostly inapplicable cases discussing the Texas state court civil cover sheets in *removal actions*, the Court agrees with BMW and its objection to the consideration of civil coversheet in this case is GRANTED. *See King v. U.S. Dept. of Veteran's Affairs*, 728 F.3d 410, 413 (5th Cir. 2013) (when determining subject matter jurisdiction, the court may only look to (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts) (*citing Ramming*, 281 F.3d at 161). As such, the Court's analysis will not be influenced by the civil coversheet when determining the amount in controversy because it is not part of the Amended Complaint.

## 3. *Pleading Damages and Remedies*

The Court now turns to BMW's third, fourth, and fifth arguments *against* jurisdiction. The third and fourth arguments are followed with what appears to be a request under Rule 12(b)(6) to dismiss those claims. *See* ECF No. 44 at 4, 6. The FCR does not address these two arguments, simply because they do not appear anywhere in BMW's Motion to Dismiss. Instead, it appears BMW is attempting to supplement its already-filed Motion to Dismiss with additional grounds for dismissal. However, because such an attack would be untimely and improper at this stage, the Court will construe these arguments as an attempt to prevail on the "legal certainty" test. *Ruiz,* 569 Fed. Appx. at 210; *Lane,* 529 F.3d at 557. Nonetheless, even taking the third, fourth, and fifth arguments into consideration, the Court is not persuaded that BMW has shown to a legal certainty

there is no "plausible set of facts" that would allow each Plaintiff to recover more than $75,000 as alleged in the Amended Complaint. *Id.*

Accepting all well-pleaded allegations as true and viewing them in light most favorable to the nonmovants, it is plausible that each Plaintiff would be able to recover economic damages for breach of warranty (express and implied) and for failure to disclose under the DTPA—entitling them to up to three times economic damages and attorney's fees.[6] Each Plaintiff's vehicle was purchased for a sum that exceeds the amount in controversy threshold. ECF No. 12 ¶¶ 18, 19, 28, 36. Plaintiffs demand not only revocation of acceptance, but also a refund of the full contract price. *Id.* at ¶ 27. Plaintiffs further demand equitable relief to replace each vehicle or repair the vehicles engines along with an extension of warranties and service contracts. *Id.*

Having considered the pleadings and motions, the Court agrees with the Magistrate Judge and ADOPTS the finding that there is at least a "plausible set of facts" that would allow each plaintiff to recover more than $75,000, exclusive of interests and costs, and therefore overrules BMW's objections. ECF No. 43 at 9. Hence, Plaintiffs' claims, exceed the jurisdictional threshold under 28 U.S.C § 1332. Accordingly, because the parties are completely diverse and Plaintiffs plausibly allege that their amounts claimed exceed the jurisdictional amount, the Court has diversity jurisdiction over these claims. While the Court has supplemental jurisdiction over the remainder of the claims under 28 U.S.C. § 1367, the Court will also determine jurisdiction under Mag-Moss.

---

[6] *See, e.g., Harris v. BMW of N. Am., LLC*, 4:19-CV-00016, 2019 WL 4861379, at *4–5 (E.D. Tex. Oct. 2, 2019) (finding amount in controversy requirement met because the DTPA claims exhibit that "each plaintiff would need only show that his or her economic damages exceed $25,000—a much lower bar than the $75,000 jurisdictional threshold"); *See also Bates v. Laminack*, 938 F. Supp. 2d 649, 656 (S.D. Tex. 2013) ("Under DTPA provisions allowing treble damages, each Plaintiff's compensatory damages—including mental anguish damages—must be approximately $13,500 or more to come within federal jurisdiction once added to a 40% contingence attorney's fee.").

### ii. Federal Question Jurisdiction under Mag-Moss

While not discussed in the FCR, this Court additionally has federal question jurisdiction under Mag-Moss. 15 U.S.C. § 2310(d)(3). As noted in a similar case, Mag-Moss "is a somewhat unique federal statute in that merely alleging a violation of the act is insufficient to confer federal question jurisdiction; a separate $50,000.00 amount in controversy requirement must also be satisfied." *Grover v. BMW of N. Am., LLC*, 1:19-CV-0012, 2020 WL 348653, at *7 (N.D. Ohio Jan. 21, 2020) (quoting *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 757 (6th Cir. 2008)).

Beginning with the text of the statute, Mag-Moss allows "consumers" to bring suit for "damages and other legal and equitable relief" for claims of breach of express and implied warranty. 15 U.S.C. § 2310(d)(1). However, individual claims must be $25.00 or greater; and the amount in controversy cannot be "less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis *of all claims* to be determined in this suit . . ." 15 U.S.C. § 2310(d)(3) (emphasis added). Unlike in diversity jurisdiction, all plaintiffs' claims under Mag-Moss are aggregated to establish the amount in controversy.[7] *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1066 (5th Cir. 1984). Therefore, as a predicate to analyzing the amount in controversy under Mag-Moss, the Court must first determine if the parties are properly joined. FED. R. CIV. P. 20(a). Because BMW opposes joinder of the parties and has filed a motion to sever, the Court will address both issues of joinder under Rule 20(a) and severance under Rule 21 together.

#### 1. *BMW's Motion to Sever Plaintiffs' Claims*

The Magistrate Judge recommended that this Court should deny BMW's motion to sever because joinder is proper. ECF 43 at 19. BMW objects to this recommendation and argues that severance is proper because the Plaintiffs' individual claims are so dissimilar, joinder will only

---

[7] The Fifth Circuit has held that some limitations apply as personal injury damages for breach of warranty, attorneys' fees, and pendant state-law claims (*i.e.,* DTPA claims) "should not be included to satisfy the jurisdictional amount. *Scarlott*, 771 F.3d 887.

cause confusion and disrupt judicial economy. ECF No. 44 at 11. In support, BMW cites two other cases that found severance warranted.[8] *Id.* This Court disagrees. First, the two cited cases are distinguishable.[9] Second, they are also outliers against the plethora of federal courts in similar cases that denied severance.[10] Arguably, because Smith lives in Fort Worth, she is the only Plaintiff who could have properly filed in another division in this district. ECF No. 12 ¶ 34.  However, even then the United States District Courts of the Northern District of Texas may have consolidated the cases *in favor of* judicial economy. *See* FED. R. CIV. P. 41. The Court agrees with the Magistrate Judge and ADOPTS the section of the FCR as it relates to BMW's Motion to Sever Plaintiffs' Claims and thereby overrules BMW's objections.

The Court finds that Plaintiffs are properly joined under Rule 20, and therefore BMW's Motion to Sever under Rule 21 is DENIED. Accordingly, the Court will address the amount in controversy requirement of the Plaintiffs' *aggregated* claims under Mag-Moss.

### 2. *Amount in Controversy under Mag-Moss*

It is undisputed that Texas law applies to Plaintiffs' breach of warranty claims. "Texas law allows recovery for the diminished value of the good caused by the breach of warranty." *Scarlott*, 771 F.3d at 888. In addition to incidental and consequential damages, Texas law states that the

---

[8] *See Alam*, 2019 WL 5847852 at *2; *Walters v. BMW of N. Am., LLC*, No. 8:18-cv-02875-TPB-CPT (M.D. FL, Nov. 22, 2019) (ECF No. 77) (cited in BMW's Notice of Supplemental Authority, ECF No. 32).

[9] First, the court in *Walters* decided severance was appropriate because there were forty-one plaintiffs who had purchased their BMWs all across the United States. *Id.* (*see* ECF No. 32).  Second, of the forty-one plaintiffs, only eight resided in that court's division. *Id.* Here, there are only three plaintiffs, and all three reside in the Northern District of Texas, with two residing here in Amarillo. ECF No. 12 ¶¶ 17, 26. Next, the court in *Alam* went to great length to establish the differences between the claims—even mistakenly stating that the "makes" of the cars were different. *Alam*, 2019 WL 5847852 at *3. To be sure, the vehicles are all of the same make—they are BMWs. The model of the vehicle has little bearing at all on confusing the issues or undermining judicial economy because all the vehicles, regardless of model, contain the same engine, and it is the engine, not the model, that is allegedly defective.

[10] *See Grover*, 2020 WL 348653, at *2; *Carroll v. BMW of N. Am., LLC*, No 1:10-cv-00224-JMS-TAB, 2019 WL 2059619, at *5 (S.D. Ind. May 9, 2019); *Loy v. BMW of N. Am., LLC*, 4:19-CV-00184 JAR, 2019 WL 6250844, at *4 (E.D. Mo. Nov. 22, 2019); *O'Connor v. BMW of N. Am., LLC*, No. 18-cv-03190-CMA-STV, 2020 U.S. Dist. LEXIS 48730, at *43 (D. Colo. Jan. 7, 2020) (ECF No. 50); *Bryant v. BMW of N. Am., LLC*, No. 2019-CV-50 (E.D. Wisc. Oct. 3, 2019) (see hearing at Dkt. No. 32) (not available on Westlaw/Lexis); *Schneider v. BMW of N. Am., LLC*, 18-CV-12239-IT, 2019 WL 4771567, at *5 (D. Mass. Sept. 27, 2019); *Schneider*, 18-CV-12239-IT (D. Mass. Nov. 8, 2019) (order by electronic docket entry, ECF No. 54) (Bloomberg, 2020).

damages are measured by "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." Tex. Bus. & Com. Code Ann. § 2.714. Simply put, the amount in controversy equals the amount the vehicles diminished in value due to the alleged defect, plus incidental and consequential damages.

The standard for determining the amount in controversy depends on whether Plaintiffs demanded a specific amount of damages in their Amended Complaint. *Scarlott*, 771 F.3d at 888. If Plaintiffs did demand a specific amount, "[t]he amount stated in the complaint is itself dispositive of jurisdiction if the claim is apparently made in good faith." *Id.* (quoting *Boelens*, 748 F.2d at 1069). As previously noted, Plaintiffs did demand a specific amount of damages, found in good faith, of an amount greater than $50,000. *See supra* Part II.A.i.1. Thus, BMW must prove to a legal certainty that Plaintiffs could not plausibly recover an aggregated $50,000 on their breach-of-warranty claims.

BMW has presented no evidence showing that the diminished value of the vehicles could not plausibly amount to $50,000.00. While the purchase prices—$78,210.47 for Mize, $83,148.80 for Pritchett, and $85,746.12 for Smith—provide evidence of what the car was worth as warranted, there is no evidence that allows the Court to contradict Plaintiffs' allegation that the damages exceed $50,000.00. ECF No. 12 ¶¶ 18, 19, 28, 36. The Court need not determine what the actual numbers are for the diminished values of the vehicles under Mag-Moss because BMW has failed to demonstrate to a legal certainty that Plaintiffs would be unable to recover at least $50,000, aggregated—or an average of $16,666.67 for each Plaintiff[11]—were they to succeed on their

---

[11] Where X = amount of recoverable damages, and Y = number of claimants, the equation X(3) = $50,000.00. provides the Court with a simple estimation of how much, on average, each Plaintiff would need to recover to establish jurisdiction. Therefore, BMW must show that, on average, each Plaintiff could not recover $16,666.67 or more in damages under Mag-Moss.

claims against BMW. *See Ramming*, 281 F.3d at 161. Accordingly, because Plaintiffs have sufficiently shown that it is plausible in light of the facts alleged in the Amended Complaint that the amount in controversy meets or exceeds the jurisdictional threshold of $50,000.00, this Court finds it has federal question jurisdiction under Mag-Moss and overrules BMW's objections thereto.

### B. BMW'S RULE 12(B)(6) MOTION TO DISMISS

The Court now turns to BMW's Rule 12(b)(6) motion to dismiss for failure to state a claim as addressed in the FCR. In summary, the FCR found that the Amended Complaint alleges a plausible set of facts for: (1) tolling the statutes of limitations; (2) Smith's actual losses; (3) breach of express warranty claims; (4) breach of implied warranty claims; and (5) Mag-Moss breach of warranty claims. *See* ECF No. 43 at 9–18. However, the FCR did recommend a ruling in favor of dismissing, without prejudice to refile, Plaintiffs' DTPA claims for failing to adequately plead their misrepresentation claims under the DTPA in accordance with Rule 9(b). *Id.* at 18.

### i. Statute of Limitations

The FCR states that the "Amended Complaint alleges a plausible set of facts that would entitle Plaintiffs to tolling of the statute of limitations." *Id.* at 12. In response, BMW objects and argues that Plaintiffs' Amended Complaint fails for lack of specificity and that the Court should therefore reject the recommendation to toll the statute of limitations and instead dismiss the claims as time-barred. ECF No. 44 at 11. The Court disagrees.

When the affirmative defense of a statute of limitations "appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013) (internal marks omitted); *Love Terminal Partners, L.P. v. City of Dallas, Texas*, 527 F. Supp. 2d 538, 550 (N.D. Tex. 2007) (Fitzwater, J.). Otherwise, claimants have "no obligation to plead against a possible affirmative defense or the possible exceptions to an affirmative defense" at this stage in the litigation." *River Capital*

*Advisors of N. Carolina, Inc. v. FCS Advisors, Inc.*, No. 4:10–cv–471, 2011 WL 831282, at *9 (E.D. Tex. Feb. 7, 2011), *adopted*, 2011 WL 831186 (E.D. Tex. Mar. 3, 2011); *Jaso v. The Coca Cola Co.*, 435 Fed. Appx. 346, 351 (5th Cir. 2011) (per curiam) ("A plaintiff typically is not required to plead, in the complaint, facts that negate an affirmative defense.").[12] Like other federal courts found in similar cases, [13] the FCR properly delineates the specific facts alleged by Plaintiffs to suggest that the statute of limitations may have been tolled by BMW's concealment. ECF No. 43 at 10–13. Thus, the Court ADOPTS this section of the FCR on the statute of limitations and overrules BMW's objections thereto.

### ii. Breach of Express and Implied Warranty Claims

Next, the FCR addresses the breach of express and implied warranty claims—and therefore the claims under Mag-Moss. *Id.* at 13–16. In its section under Rule 12(b)(6), BMW does not object to these parts of the FCR. However, because it appears BMW may have attempted to make the objection in the Rule 12(b)(1) section previously discussed, the Court will nonetheless address BMW's objections under Rule 12(b)(1) as if they were asserted under Rule 12(b)(6). ECF No. 44 at 4–5. After considering the pleadings, the FCR, BMW's Motion to Dismiss, and BMW's objections, the Court is not persuaded. The Magistrate Judge properly found that Plaintiffs' allegations satisfy the pleading requirements to state their breach of express and implied warranty claims, and thus have stated a claim under Mag-Moss. ECF No. 43 at 14–16. Therefore, the Court ADOPTS these sections of the FCR and overrules BMW's objections.

---

[12] *See Xechem, Inc. v. Bristol–Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Complaints need not contain *any* information about defenses and may not be dismissed for that omission."); *see also* FED. R. CIV. P. 8(c)(1) (providing that the party "responding to a pleading" must "affirmatively state any . . . affirmative defense"); *Constr. Cost Data, LLC v. Gordian Group, Inc.*, CV H-16-114, 2017 WL 2266993, at *6 (S.D. Tex. Apr. 24, 2017), *adopted*, 4:16-CV-114, 2017 WL 2271491 (S.D. Tex. May 22, 2017).

[13] *See O'Connor*, 2020 U.S. Dist. Lexis 48730 at *16; *Harris*, 2019 WL 4861379 at *; *Schneider*, 2019 WL 4771567 at *7; *Carroll*, 2019 WL 4243153 at *8; *Grover*, 2020 WL 348653 at *9; *Torres v. BMW of N. Am.*, No. 3:19-cv-087-JD; (N.D. Calif. Aug. 16, 2019) (Donato, J.) (finding in a hearing on the record that plaintiffs plead enough facts under *Twombly-Iqbal* to survive statute of limitations).

### iii. DTPA Claims

After finding that Smith, a purchaser of a used BMW, could properly bring her claims under the DTPA, the FCR states "Plaintiffs have not sufficiently pleaded their misrepresentation claims under the DTPA and Rule 9(b). *Id.* at 18. BMW argues that Smith cannot recover under the DTPA because she purchased her BMW used. ECF No. 44 at 8. BMW also argues that Smith is "seeking damages based on alleged indirect representations" and claims that Smith "cites no direct representation from BMW NA to [Smith] in connection with [her] decision to purchase the vehicle." ECF No. 44 at 9. BMW rests its arguments on *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, where the Texas Supreme Court explained that "a downstream buyer *can* sue a remote seller for breach of implied warranty, but *cannot* sue under the DTPA." 146 S.W. 3d. 79, 87 (Tex. 2004) (emphasis in original). However, BMW mischaracterizes the holding of this case in its application here.

To clarify, the Texas Supreme Court was confronted with the issue of *assigning* rights to sue under the DTPA where a "downstream purchaser" brought express warranty DTPA claims "against a remote manufacturer, even though there was no privity of contract between them." *PPG Indus., Inc*., 146 S.W. 3d. at 88. Further, the Texas Supreme Court explained that the downstream purchaser "asserted no DTPA claims in its own right, as it had no connections with PPG's original . . . sale, and never saw any PPG advertisements or warranties before it bought the building." *Id.*

Here, in accordance with the FCR, Smith's allegations do not establish her as a "downstream purchaser." Rather, Smith alleges she purchased the vehicle from BMW, in privity of contract, when she purchased her vehicle with a Certified Pre-Owned Warranty. ECF No. 43 at 17–18. Under BMW's reasoning, a consumer who decides to purchase a vehicle after his lease period, but still directly from an authorized BMW dealer—like Pritchett did here—would also be

precluded from bringing DPTA claims because the vehicle purchased would be technically "used." This Court declines to stretch the words of the Texas Supreme Court to fit that narrative.

The Court now turns to the sufficiency of pleadings for Plaintiffs' DTPA claims. With respect to misrepresentations, the Court agrees and ADOPTS in part the FCR as to the finding that Plaintiff's *affirmative* misrepresentations claims under the DTPA are not pled with particularity, especially with respect to the "who, what, when, and how" these affirmative representations were made. ECF No. 43 at 18. However, the Court disagrees in part with the FCR and finds that Plaintiffs *have* sufficiently pleaded allegations with respect to BMW's *omission* of material information—a valid claim under the DTPA.

To prove a DTPA action for failure to disclose information, the plaintiff must show (1) a failure to disclose, (2) which was known at the time of the transaction, (3) which was intended to induce the plaintiff into a transaction, and (4) that the plaintiff otherwise would not have entered the transaction if the information had been disclosed. *Hudspeth v. Enter. Life Ins. Co.*, 358 S.W.3d 373, 388 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "To be actionable under the DTPA, 'a failure to disclose material information necessarily requires that the defendant have known the information and have failed to bring it to the plaintiff's attention.'" *Washington v. U.S. Dept. of Hous. & Urban Dev.*, 953 F. Supp. 762, 777 (N.D. Tex. 1996) (Solis, J.) (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 479 (Tex. 1995)); *see also* Tex. Bus. & Com. Code Ann. § 17.46(b)(24) (stating that it is unlawful to fail to "disclose information concerning goods or services which was known at the time of the transaction").

Here, Plaintiffs allege that "BMW had exclusive knowledge or access to material facts about N63 vehicles and engines, not known or reasonable discoverable by consumers," and "failed to disclose the defect to consumers prior to or at the time of purchase or lease." ECF No. 12 ¶ 64. Specifically, Plaintiffs "allege that BMW acquired its knowledge of the oil consumption defect in

15

2008, if not before, through sources not available to Plaintiffs," including pre-release testing data, durability testing, early consumer complaints, testing conducted in response to those complaints, aggregate data from BMW dealers, dealer repair orders, and other internal sources. *Id.* at ¶ 82. Plaintiffs specifically state when, where, and how they each relied on the warranty made by BMW when they each purchased their BMWs. *Id.* at ¶¶ 18, 27, 35, 43, 44. Plaintiffs also claim they would not have purchased their vehicles had they known of the defects. *Id.* at ¶ 89. This is evidenced by their claims for out-of-pocket costs incurred, the persistent need to add oil between recommended oil changes to prevent catastrophic engine failure, and the risk of oil suddenly "burning up," causing engine failure at any time during operation. *Id.* at ¶¶ 25, 33, 37, 84, 85.

The Court finds that Plaintiffs have plausibly pleaded that BMW, through its authorized dealers, failed to disclose the N63 engine defect, that it was material information about the vehicle known by BMW prior to each of Plaintiff's sales, and BMW withheld the information of the defect as it intended to induce Plaintiffs to purchase the vehicles. Tex. Bus. & Com. Code Ann. § 17.46(24). The Court thus finds that Plaintiffs have plausibly pleaded that BMW engaged in conduct prohibited by the DTPA by failing to disclose the defect in the N63 engine at the time of the sales. Accordingly, the Court ADOPTS in part the FCR as to affirmative representations under the DPTA, supplementing the FCR with the foregoing analysis to GRANT in part and DENY in part Defendant's Rule 12(b)(6) motion to dismiss as to Plaintiff's DTPA claims. Additionally, because the Court found that at least some of Plaintiffs' DTPA claims have survived at this stage, BMW's objection to the application of treble damages and attorneys' fees under the DTPA to the amount in controversy under 28 U.S.C. § 1332 is overruled.

### III. CONCLUSION

For the forgoing reasons, it is therefore ORDERED that the findings, conclusions, and recommendation of the Magistrate Judge (ECF No. 43) are ADOPTED in part and that BMW's

Motion to Dismiss (ECF No. 14) is (1) GRANTED in part with respect to Plaintiffs' affirmative misrepresentation claims under the DTPA; and (2) DENIED in part with respect to all other claims. Accordingly, Plaintiffs' affirmative misrepresentation claims under the DTPA are DISMISSED without prejudice to refiling.

It is further ORDERED that Plaintiffs shall be allowed 21 days from the date of this order to file a Second Amended Complaint repleading (1) proper diversity of citizenship; and (2) each Plaintiff's claims under the DTPA, individually and with sufficient particularity to demonstrate the affirmative misrepresentations alleged to each Plaintiff. If they elect to amend, Plaintiffs shall underline any alterations or additions contained in the Second Amended Complaint that were not included in the first Amended Complaint.

It is further ORDERED that, unless specifically granted above, BMW's objections to the FCR are OVERRULED. It is further ORDERED that BMW's objections (ECF Nos. 24, 29) to Plaintiffs' notices of supplemental authority are hereby OVERRULED.

**SO ORDERED**.

March 31, 2020.

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE