**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| JOHNNY MIZE, ROBERT STEVEN PRITCHETT, and DORA SMITH, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 2:19-CV-7-Z-BR |
| BMW OF NORTH AMERICA, LLC, | § § | |
| Defendant. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS TO DENY IN PART
AND GRANT IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs bought vehicles, which they claim are defective, from Defendant BMW of North America, LLC. This alleged defect produced a class action, but Plaintiffs opted out. They then sued in this Court, alleging that BMW violated its warranty by failing to make repairs and that BMW violated the Texas Deceptive Trade Practices Act (DTPA) by misrepresenting their vehicles' capabilities and characteristics. Now before the Court is Defendant BMW of North America, LLC's motion for summary judgment. (ECF 69). BMW argues that (1) Plaintiffs' warranty claims are barred by limitations, (2) their express-warranty claims are without substance, (3) their DTPA claims are barred by limitations, and (4) their DTPA claims are barred by the economic-loss rule. Having considered the motion and the relevant documents on file, the undersigned United States Magistrate Judge recommends that BMW's motion regarding class-action tolling and Pritchett's warranty claim be GRANTED, and that the remainder of the motion be DENIED.

## I.    BACKGROUND

The Court draws its factual background from the parties' pleadings, briefs, and appendixes, and generally presents facts in the light most favorable to Plaintiffs. This section does not,

however, represent the Court's findings.

### 1. BMW introduced the N63 engine and then learned it contained a defect.

In 2008, BMW introduced the N63-series engine, and within two years, customer complaints rolled in about its oil consumption. (Manzari Report[1] at ¶ 20, ECF 81-5). Over the next few years, BMW examined the N63's oil consumption. By 2012, it admitted that N63's oil consumption "does not match the customer's expectation." (*Id.* at ¶ 25, ECF 103). A 2013 report— titled, "N63 Oil Consumption–High Mileage–Valve Seals Worn"—reported that some BMW dealerships determined that the N63 engine consumed excessive oil because of worn and leaking valve seals. (*Id.* at ¶ 26). BMW eventually acknowledged that defective valve-stem seals often caused the engine to consume excessive oil. By May 2015, BMW informed its dealerships, in a bulletin titled, "N63 Engine: Valve Seal Replacement," when and how to replace the N63's valve-stem seals. (*Id.* at ¶ 35, ECF 81-5). Plaintiffs' expert claims that the N63 engine consumes excessive oil due to defective valve-stem seals. (*Id.* at ¶ 40).

While BMW knew of the N63 engine's problems, publicly it claimed and acted as though everything was normal. It instructed its dealerships, which acted as BMW's agents,[2] to tell customers that the N63's high oil consumption was normal. BMW expected its dealerships to follow its bulletins. (Murray Depo, ECF 103 at 19). A 2013 BMW bulletin stated its purpose was to "serve[] as an argumentation aid in the event of a complaint about engine oil consumption." (Manzari Report at ¶ 28, ECF 103). Another bulletin redefined "normal" oil consumption, allowing the engine to consume more oil and still be "normal." (*Id.* at ¶ 31, ECF 81-5). These bulletins and others instructed BMW dealerships—rather than remedying the defective valve-stem seals—to treat the defect's symptoms by topping off the oil, adding additional oil, or changing the oil more

---

[1] Plaintiffs retained Darren Manzari to provide expert opinions regarding the N63-series engine.
[2] Although this is a legal conclusion, BMW seems to concede the point.

frequently. (*Id.* at ¶ 56, ECF 81-5). And during all of this, BMW represented that the N63 was operating normally. (*Id.*).

2.     **Plaintiffs bought BMW vehicles equipped with the N63 engine, and BMW failed to repair the defect during the warranty period.**

Each plaintiff bought a BMW vehicle equipped with the N63 engine from an authorized BMW dealership and later took the vehicle back to the dealership with oil-consumption complaints. Each Plaintiff's vehicle was covered by a BMW certified pre-owned warranty that, "cover[ed] repair costs related to the failure of covered parts and components (mechanical and electrical) on an eligible BMW . . . due to a defect in material or workmanship." (ECF 81-3 at 4). BMW did not repair any of Plaintiffs' vehicles to significantly decrease oil consumption. Each plaintiff's specific details are below:

*Johnny Mize*

In July 2012, Mize leased his new BMW vehicle and, at the end of his lease, bought it in August 2015. (Mize Dec., ECF 81-9). His warranty expired the earlier of 100,000 miles or June 2018. (Warranty Info, ECF 81-2; Mize Dec., ECF 81-9). After Mize drove his vehicle about 1,500 miles, the low-oil light came on. (Mize Depo, ECF 81-11 at 5). Mize took it to the dealership, but BMW told him that, during the break-in period, this was normal. (*Id.* at 8). He "took them at their word" and continued to add more oil. (*Id.* at 6, 8). Although the consumption improved over the next couple of years, it eventually got much worse: by 2016, it consumed one quart every 2,000 miles and, by 2018, it consumed one quart every 1,000 miles or less. (Mize Dec., ECF 81-9). Throughout this time, Mize took his vehicle to BMW dealerships, questioning his vehicle's engine. But BMW assured him that everything was normal and that he just needed to add more oil. (Mize Depo., ECF 81-11 at 9, 32) Finally, in August 2016, BMW told Mize that the N63 was known to consume excessive oil. (*Id.* at 14).

*Steven Pritchett*

In December 2012, Pritchett bought his new BMW vehicle with an extended warranty that expired the earlier of 100,000 miles or December 2018. (Pritchett Dec., ECF 81-13). Pritchett first noticed his vehicle's high oil consumption in late 2016. (Pritchett Depo., ECF 81-14 at 7). At that time, the vehicle had between 85,000 and 90,000 miles. (BMW's MSJ App'x at 13). BMW told him that the rate of oil consumption was normal. (Pritchett Depo., ECF 81-14 at 9). He returned to the dealership multiple times in 2017, and his concerns were always dismissed. (*Id.* at 8). Although his vehicle passed 100,000 miles sometime in late 2017, today, Pritchett must add a quart of oil every 200 miles. (*Id.* at 7 and 14). He realized this was not normal in January 2018. (*Id.* at 5, 13).

*Dora Smith*

Smith bought her vehicle—which was pre-owned and originally sold in July 2012—in December 2013. (BMW's MSJ App'x, ECF 71 at 29; Smith Dec., ECF 81-15). Its warranty expired the earlier of 100,000 miles or in July 2019. (*Id.* at 29). Her low-oil light first came on in the summer of 2014. (Smith Depo., ECF 81-17 at 22–23). She took her vehicle to the dealership, but BMW told her the high oil consumption was normal. (*Id.* at 13, 23). Smith eventually had to add oil every 1,000 miles, and BMW continually insisted this was normal. (*Id.* at 9). She eventually realized this was not normal in the summer of 2017. (*Id.* at 14).

**3.     Plaintiffs learned of the defect and sued BMW.**

In 2015, a class action was brought against BMW related to the N63 engine's alleged defect. *See Bang v. BMW of N. Am., LLC*, NO. 2:15-cv-6945-MCA-SCM (D. N.J. 2015). As an owner of a vehicle equipped with an N63 engine, each plaintiff was a member of the class action. But in August 2018, Plaintiffs requested to be excluded from that class action. (ECF 81-7). On January 8, 2019, Plaintiffs brought this suit and asserted the following claims: (1) breach of

warranty pursuant to the Magnuson-Moss Warranty Act (MMWA); (2) breach of implied warranty of merchantability pursuant to the MMWA; (3) breach of express warranties; and (4) breach of the Texas Deceptive Trade Practices Act (DTPA). (Pls.' Sec. Amend. Comp't, ECF 48). In April 2021, BMW filed this motion for summary judgment. (ECF 69).

## II.    LEGAL STANDARD

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c)(1). A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must show that the evidence is sufficient to resolve issues of material fact in its favor. *Anderson*, 477 U.S. at 249.

When evaluating a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255. However, it is not incumbent upon the Court to comb the record in search of evidence that creates a genuine issue as to a material fact. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party must cite the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for

summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

### III.    ANALYSIS

BMW moves for summary judgment on four grounds. For the reasons explained fully in this section, the Court reaches the following conclusions:

1. **MMWA Limitations.** BMW argues that limitations bars Plaintiffs' MMWA claims. Plaintiffs respond that fraudulent concealment, equitable tolling, and class-action tolling extend limitations. The undersigned concludes that both fraudulent concealment and equitable tolling extend the limitations period for both Mize and Smith, but not for Pritchett. The Court also concludes that class-action tolling is inapplicable.

2. **Express Warranty.** BMW argues that Plaintiffs' express-warranty claims are unsubstantiated. The undersigned disagrees and concludes that genuine disputes of material fact exist on each element.

3. **DTPA Limitations.** BMW argues limitations bars Plaintiffs' DTPA claims. The undersigned concludes that limitations should be extended because there are genuine disputes of material fact.

4. **Economic-Loss Rule.** BMW argues that the economic-loss rule bars Plaintiffs' DTPA claim, but the undersigned concludes that rule is inapplicable.

### 1.    Limitations on the MMWA Claims

The parties agree that Plaintiffs' MMWA claims have a four-year limitations period that accrued on the day of first sale.[3] (Pls.' MSJ Resp. Brief, ECF 80 at 6) ("The Plaintiffs agree that the applicable statute of limitations is four years under Tex. Bus. & Com. Code § 2.725(a)."). The Court also agrees. *See Harris v. BMW of N. Am., LLC*, No 4:19-cv-16, 2020 WL 7081808, at *2 (E.D. Tex. Dec. 3, 2020) (Mazzant, J.) (analyzing same issue); *B. Mahler Interests, L.P. v. DMAC*

---

[3] The Court notes that oddity of having a six-year warranty that is time barred after four years. *See Withers v. BMW of N. Am., LLC*, 2021 WL 4204332, *7 (W.D.N.C. Sept. 15, 2021) (Noting that Plaintiff did not dispute that "BMW maintains that the statute of limitations cannot extend to six years past the date of delivery, and the statute of limitations expired four years after the date of delivery"); *Jones v. BMW of N. Am., LLC*, 2020 WL 5752808, *3 n.2 (M.D.N.C. Sept. 25, 2020) (same)

*Constr., Inc.*, 503 S.W.3d 43, 49 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("A breach of warranty claim accrues when the goods are delivered, regardless of the aggrieved party's lack of knowledge of the breach.") (cleaned up). Although a claim on a warranty that "explicitly extends to future performance of the goods" accrues when the breach should have been discovered, Plaintiffs do not argue this provision applies. *See* Tex. Bus. & Com. Code § 2.725(b). Accordingly, the Court concludes that Plaintiffs' claims accrued on the day each Plaintiff took possession, and that limitations—absent an exception—expired on the following dates: Mize, July 2016; Pritchett, December 2016, and Smith, July 2016.

Since Plaintiffs sued in 2019, limitations bars their MMWA claims unless limitations should be extended. The issue before the Court is whether anything extends limitations through the date Plaintiffs filed suit—January 8, 2019. For the reasons below, the Court concludes that genuine disputes of material fact exist regarding both (a) fraudulent concealment and (b) equitable tolling. Applying these doctrines to the Plaintiffs' situations leads the Court to conclude that limitations was sufficiently tolled for both Mize and Smith—but, even viewing the facts in his favor—limitations still ran on Pritchett's case. Last, the Court concludes that (c) class-action tolling is legally inapplicable.

### a. Fraudulent Concealment

Texas law tolls limitations when the defendant fraudulently conceals its wrong. *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996); *see also Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015). "Texas courts have long recognized that 'fraud vitiates whatever it touches,' and [the Texas Supreme Court has] consistently held that 'a party will not be permitted to avail himself of the protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress within the period of limitations.'" *Valdez*, 465 S.W.3d at 230 (quoting *Borderlon*

*v. Peck*, 661 S.W.2d 907, 908–09 (Tex. 1983)).

Although Texas courts' language has been imprecise, fraudulent concealment does not **defer** the accrual date—it **tolls** the limitations period. *Compare S.V. v. R.V.*, 933 S.W.2d at 6 ("In one type, those [cases] involving allegations of fraud or fraudulent concealment, ***accrual is deferred*** because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run.") (emphasis added); *with BP Am. Produc. Co. v. Marashall*, 342 S.W.3d 59, 67 (Tex. 2011) ("A defendant's fraudulent concealment of wrongdoing ***may toll the statute of limitations after the cause of action accrues*.") (emphasis added). A leading treatise states that fraudulent concealment "is more correctly viewed as deferring the accrual of the cause of action in the same manner as the discovery rule." 5 DORSANEO, TEX. LIT. GUIDE § 72.04[1][a]. Despite the contrary authority, the Court concludes that fraudulent concealment disregards the accrual date and instead tolls limitations. Tolling better fits the rule's past application. *See e.g.*, *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 439 (Tex. App.—Fort Worth 1997, pet. denied). Moreover, unlike under common-law claims, the warranty statute defines the accrual date. *B. Mahler Interests*, 503 S.W.3d at 50 (citing TEX. BUS. & COM. CODE § 2.725(b)). When a statute defines the accrual date, the legislature removed the courts' authority to change it. *See S.W. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 721 (Tex. 2016). But unlike the accrual date, the relevant statute of limitations did "not alter the law on tolling of the statute of limitations . . . ." TEX. BUS. & COM. CODE § 2.725(d). And, because there are many cases applying fraudulent concealment to warranty claims, it must be by way of tolling. For these reasons, the Court concludes that fraudulent concealment is a doctrine of *tolling*, not *deferring*.

Tolling of limitation ends when the plaintiff should have learned of the wrong. *Valdez*, 465 S.W.3d at 230 ("[F]raudulent concealment ends when a party learns of facts, conditions, or

circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to the discovery of the concealed cause of action."). "Once a plaintiff knows or should know of the deceit, reliance is no longer reasonable, and the tolling effect ends." *Mitchell Energy*, 958 S.W.2d at 439. Thus, if applicable, fraudulent concealment tolls limitations from the date of concealment to the date the plaintiff should have learned of the wrong.

To take advantage of this tolling at summary judgment, a plaintiff has the burden to provide evidence creating a genuine dispute of fact on the following elements:

1) the defendant had actual knowledge of the wrong;

2) the defendant concealed the wrong by making a misrepresentation or by remaining silent when it had a duty to speak;

3) the defendant had a fixed purpose to conceal the wrong; and

4) the plaintiff reasonably relied on the misrepresentation or silence.

*Harris,* 2020 WL 7081808 at *3; *Santanna Nat. Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 890–91 (Tex. App.—Austin 1997, pet. denied). The Court addresses each element below.

First, there is a genuine dispute whether BMW had actual knowledge of a wrong. *See Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999) (holding that fraudulent concealment "requires evidence that the defendant actually knew the plaintiff was in fact wronged"). To support this element, Plaintiffs rely exclusively on the report of Darren Manzari, their designated expert.[4] Manzari cites internal BMW reports showing that, as early as 2010, BMW knew that the N63 engine consumed high amounts of oil. By March 2013, BMW acknowledged that, in certain situations, the engine's excessive oil consumption could "only be rectified by fitting an exchange engine." (Manzari Report at ¶ 29, ECF 103). Despite this knowledge, BMW advised Plaintiffs that

---

[4] Although BMW complains that Manzari's opinions are "hearsay within hearsay," the Court may still consider them. *See Deshotel v. Wal-Mart La, L.L.C.*, 850 F.3d 742, 746–47 (5th Cir. 2017) (considering expert affidavit based on expert's knowledge and review of documents).

their vehicles were performing normally and to just add oil. Based on this and other reports, Manzari ultimately opines that the N63 engine contains defective valve-stem seals, and that BMW concealed this defect from its customers. Although BMW submitted evidence that the N63 engine consumed oil within specification and not "excessively," its evidence is not so strong as to require the Court to find in BMW's favor as a matter of law. Instead, viewing the evidence in the light most favorable to Plaintiffs, there is sufficient evidence to create a genuine dispute of fact on this element.

Second, Plaintiffs' evidence creates a genuine dispute of fact whether BMW concealed the wrong by making affirmative misrepresentations. An affirmative misrepresentation constitutes fraudulent concealment when it prevents the plaintiff from discovering the defendant's wrong. *Santanna Nat. Gas*, 954 S.W.2d at 890 ("We therefore hold that affirmative misrepresentations can support a fraudulent concealment defense to a statute of limitations bar even in the absence of a duty to disclose."). That occurred here. By 2013, BMW knew faulty valve-stem seals caused oil consumption. (Manzari Report at ¶ 56, ECF 81-5). Despite that, BMW—through its authorized dealerships—represented to each Plaintiff that their vehicle's engine was operating normally. Instead of remedying the underlying issue, BMW added more oil, recommended more frequent oil changes, and insisted that the N63's consumption of oil was normal. (*Id.*). Viewing the evidence in the light most favorable to Plaintiffs, there is a genuine dispute of fact on this element.

Instead of addressing these facts, BMW argues that it had no duty to disclose its knowledge of any defects. (BMW's MSJ Reply at 3, ECF 93). This argument misses the point. Plaintiffs do not argue that BMW had a duty to disclose. Instead, they argue Texas law prohibits BMW from affirmatively misrepresenting facts. BMW acknowledges this legal principle, yet claims the statements were not affirmative misrepresentations—merely incomplete or partial statements.

(*Id.*). But its supporting authority for this argument is off point. *See United Teacher Ass. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 568 (5th Cir. 2005) (analyzing fraud-by-nondisclosure, not fraudulent concealment); *Bradford v. Vento*, 48 S.W.3d 749, 755–56 (Tex. 2001) (same); *see also Advent Trust Co. v. Hyder*, 12 S.W.3d 534, 542 (Tex. App.—San Antonio 1999, pet. denied) (holding elements of fraud-by-nondisclosure are different than fraudulent concealment's elements). Moreover, BMW's repeated assertions that the N63 was performing normally could reasonably be found an affirmative misrepresentation. For these reasons, the Court finds BMW's argument unpersuasive.

Third, there is a genuine dispute whether BMW had a fixed purpose to conceal the wrong. BMW's intent to conceal its wrong can be proved by either direct or circumstantial evidence. *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999) ("Of course, fraudulent concealment may be shown by circumstantial evidence as well as direct evidence."). As Manzari's report details, the evidence supports the inference that BMW treated the N63's symptoms (by adding more oil) rather than its cause (replacing the defective valve or engine itself). BMW's motivation for avoiding the larger problem can be reasonably inferred—a engine replacement costs between $12,500 and $15,000. (Manzari Report at ¶ 82). Viewing the evidence in the light most favorable to Plaintiffs, it is reasonable to infer that BMW concealed the N63's defects to save money.

Last, Plaintiffs submitted evidence that they reasonably relied on BMW's misrepresentation. Each Plaintiff submitted a declaration averring his or her reliance. (Pls.' MSJ App'x, ECF 81-10, 81-13, 81-16). BMW does not contest this.

Although these fact disputes trigger the application of fraudulent concealment, the application leads to different results for different Plaintiffs. For this motion, the Court must view the evidence in the light most favorable to Plaintiffs. Viewed through this standard, tolling began

11

on the following dates for each Plaintiff: Mize, second half of 2016; Pritchett, the winter of 2016; and Smith, the summer of 2014. Regarding the beginning of the tolling, Mize first brought his vehicle to BMW for high oil consumption in the second half of 2012. Pritchett brought his vehicle into the dealership for excessive oil consumption just before limitations expired in late 2016. And Smith first took her vehicle to BMW in the summer of 2014, only two years after it was first sold. In each case, BMW affirmatively misrepresented that the engine was performing normally. As of those dates, BMW's alleged deceit tolled the running of limitations.

Tolling ended when Plaintiffs should have known of BMW's deceit. Viewing the evidence in the light most favorable to Plaintiffs, that was the following dates: Mize, August 2016; Pritchett, January 2018; and Smith, the summer of 2017. For Mize, BMW admitted that the N63 had known oil-consumption problems in August 2016. Pritchett eventually realized the rate of oil consumption was not normal in January 2018. And Smith only realized there was a problem in the summer of 2017.

These dates show that the tolling sufficiently extended limitations for Mize and Smith, but not for Pritchett. The timeline below shows the relevant dates. The circles represent the date each claim accrued; in this case, the date each Plaintiff took possession. Tolling, which is represented by the black bar, started when BMW first concealed the N63 engine's issue and ended when each Plaintiff should have learned the facts about the engine. Plaintiffs filed suit on January 8, 2019.



Although these dates are only approximate, they show that fraudulent concealment tolled limitations so that Mize and Smith sued less than four years after their MMWA claims accrued:

Mize in about three years, and Smith in about three and a half years. However, even viewing the evidence in the light most favorable to Pritchett, fraudulent-concealment tolling only extended his limitations by just over one year. Because Pritchett sued more than six years after his MMWA claim accrued, his claim is still barred by limitations.

### b. Equitable Estoppel

Although a separate doctrine, the Court concludes that equitable estoppel and fraudulent concealment both lead to the same result for the same reasons. *See B. Mahler Interests*, 503 S.W.3d at 54 n.4 ("Because fraudulent concealment is based on the doctrine of equitable estoppel, and because [the plaintiff's] equitable estoppel and fraudulent concealment defenses are based on the same alleged conduct by [the defended], we consider them together."). Equitable tolling is a court-created doctrine that "excuses a timely filing when the plaintiff could not, despite the exercise of reasonable diligence, have discovered all the information he needed in order to be able to file his claim on time." *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 311 (Tex. 2010). Texas courts invoke it "sparingly." *Myers v. Nash*, 464 F. App'x 348, 349 (5th Cir. 2012) (citing *Hand v. Stevens Transp., Inc.*, 83 S.W.3d 286, 293 (Tex. App.—Dallas 2002, no pet.)). To establish equitable estoppel, Plaintiffs must create a genuine issue of material fact on the following elements:

1) a false representation or concealment of material facts;

2) made with knowledge, actual or constructive, of those facts;

3) with the intention that it should be acted on;

4) to a party without knowledge or means of obtaining knowledge of the facts;

5) who detrimentally relies on the representations.

*Subsea 7 Port Isabel, LLC v. Port Isabel Log. Offshore Term.*, 593 S.W.3d 859, 868 (Tex. App.—Corpus Christi-Edinburg 2019, pet. denied). The doctrine's overriding focus is whether the plaintiff

has "excusable ignorance of the limitations period." *Id.*; *see also Medina v. Tate*, 438 S.W.3d 583, 591 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (stating that equitable estoppel's essential elements are as follows: "that the defendant, by his words or conduct, induced the plaintiff to delay filing his cause of action beyond the time permitted by the applicable statute of limitations, unmixed with any want of diligence on the plaintiff's part").

Applying the Plaintiffs' facts to this test, the Court concludes that equitable tolling reaches the same result as fraudulent concealment. *See B. Mahler Interests*, 503 S.W.3d at 54 n.4 (considering them together because of their similarity). BMW repeatedly told the Plaintiffs that their vehicles' engines were performing normally, all while BMW knew the engine had defects. Circumstantial evidence suggests that BMW intended Plaintiffs to delay, or even forego, repairs. There is also no reason for Plaintiffs to independently know of the N63 engine's defects, and each Plaintiff relied on BMW's representations. But limitations is four years. After taking out the time Plaintiffs were not expected to know of their claim and viewing the evidence in the light most favorable to Plaintiffs, Mize and Smith sued less than four years after their claims accrued—but Pritchett sued more than four years after his claim accrued. Thus, Mize's and Smith's claims are timely, and Pritchett's claim is untimely.

### c.   Class-Action Tolling

Plaintiffs argue that the class action involving the N63 engine filed in the Federal District Court of New Jersey tolls their MMWA claims. *See Bang v. BMW of N. Am., LLC*, No. 15-cv-06945 (D. N.J. 2015). They rely on *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) (holding that a federal class action tolls limitations). Having considered this argument, the Court concludes that neither *American Pipe* nor any other class-action tolling endows the *Bang* action with the power to toll limitations in this case.

14

This conclusion necessarily results because a federal class-action suit in New Jersey does not have cross-jurisdictional effect on a MMWA claim filed in Texas. *See Newby v. Enron Corp.*, 542 F.3d 463 (5th Cir. 2008); *Vaught v. Showa Denko K.K.*, 107 F.3d 1137 (5th Cir. 1997). MMWA claims borrow their limitations from the forum jurisdiction. *Harris*, 2020 WL 7081808 at *2 (citing *Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988)). This includes any accompanying tolling rules. *Vaught*, 107 F.3d at 1145. Thus, this Court must apply Texas's tolling rules.

Texas does not toll its limitations for a federal class action. *Id.* at 1147. The Fifth Circuit articulated Texas's law as follows:

> A state (Texas) class action that raises property damage-type claims tolls a Texas statute of limitation pending a certification ruling. And, consistent with our understanding of this Texas tolling rule, it is unclear whether, under this rule, a federal class action filed in Texas or in any other State would ***ever*** toll a Texas statute of limitations, regardless of the type of claims raised."

*Id.* (emphasis added). Other courts have similarly read this precedent. *See Newby*, 542 F.3d at 472 (holding that federal class actions do not toll a state statute of limitations); *In re BP P.L.C. Sec. Litig.*, 51 F. Supp. 3d 693, 700 (S.D. Tex. 2014). Therefore, under this Court's binding precedent, a federal class action has no effect on Texas's statute of limitations.

This rule renders the *Bang* class action, in ways relevant here, impotent. The *Bang* action involved substantively similar claims against the same defendant, but it was brought in federal court in New Jersey. Under Texas's tolling rules, this federal class action does not toll limitations. Plaintiffs correctly distinguish this action—in which BMW undisputedly had fair notice of future MMWA claims—and the precedents relied on by *Vaught* and *Newby*—in which notice was unclear. Although the Court sympathizes with this argument, it also notes that "cross-jurisdictional tolling is a controversial doctrine, and has, to date, been accepted by few states." *In re BP P.L.C.*, 51 F. Supp. 3d at 700. For this reason, whatever the argument's merits, the Court is not willing to step

out on a limb and defy Fifth Circuit precedent. Accordingly, the Court concludes that class-action tolling is inapplicable.

**2.    Express-Warranty Claims**

BMW next argues that Plaintiffs' express-warranty claim fails because they "cannot identify a single instance where BMW NA failed to comply with its express warranty obligations." (BMW's MSJ Brief, ECF 70 at 13). The parties agree that the elements of a breach-of-express-warranty claim are as follows:

1)   an express affirmation of fact or promise by the seller relating to the goods;

2)   that such affirmation of fact or promise by the seller became a part of the basis of the bargain;

3)   that the plaintiff relied upon said affirmation of fact or promise;

4)   that the goods failed to comply with the affirmation of fact or promise;

5)   the plaintiff was injured by such failure of the product to comply with the express warranty; and

6)   that such failure was the proximate cause of the plaintiff's injury.

*Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 814 (S.D. Tex. 2013); *see also* TEX. BUS. & COM. CODE § 2.313(a)(1).

Plaintiffs have submitted sufficient evidence on each element to create a genuine dispute of fact. First, BMW issued a written warranty on these vehicles. (Pls.' MSJ App'x, ECF 81-2, 82-3). BMW argues that Plaintiffs do not allege what affirmation, promise, or description about their vehicle became the basis of their purported bargain with BMW, but this overlooks the written warranty and its promise to "cover[] repair costs related to the failure of covered parts and components (mechanical and electrical) on an eligible BMW . . . due to a defect in material or workmanship." (ECF 81-3 at 4). Second, the warranties were part of the basis of the bargain.

16

Again, BMW's motion seems to call this into question, but BMW does not elaborate its position. It is not clear how the warranty would not be a basis to the bargain, so the Court finds that it was. Third, Plaintiffs testified that they relied on the warranty, and BMW does not dispute this. (Pls.' MSJ App'x, ECF 81-10, 81-13, 81-16).

Fourth, BMW argues there is no evidence that the vehicles contain a defect calling for a repair. But Plaintiffs' expert, Manzari, opines that the N63 engine contains a defective valve-stem seal. The expert reviewed pictures and videos of each Plaintiff's vehicle. Viewing the evidence in the light most favorable to Plaintiffs, there is a genuine dispute of fact on this issue.

Fifth and sixth, Plaintiffs took their vehicles to BMW, but BMW failed to repair the underlying defect and instead covered up the defect by adding oil. This caused Plaintiffs injury by, among other things, decreasing the value of their vehicles. (Manzari Report, ECF 81-5 at ¶ 80). BMW argues that Plaintiffs "could not recall a single instance where a necessary repair was not covered by warranty during the warranty period." (BMW MSJ Brief, ECF 70 at 13). Although this out-of-context deposition excerpt lends some support to BMW's position, it does not undermine the evidence supporting Plaintiffs' argument, i.e., Plaintiffs did not know their vehicles needed repairs because BMW concealed the defect from them. Each plaintiff testified that BMW inspected their vehicle during the warranty period and that BMW, while knowing of the N63 engine's defect, failed to repair the defect. Therefore, viewing the evidence in the light most favorable to Plaintiffs, there are genuine issues of material fact. *See Harris*, 2020 WL 7074878, at *6.

For these reasons, the Court concludes there are genuine disputes regarding each material fact of Plaintiffs' express-warranty claims.

### 3.    DTPA Limitations

BMW argues limitations bars Plaintiffs' DTPA claims. Viewing the evidence in the light

most favorable to Plaintiffs, the Court concludes that there are genuine disputes of material fact regarding the date Plaintiffs, in the exercise of reasonable diligence, should have discovered their vehicles' defect. The Court also concludes that Mize's limitations should be extended an additional 180 days because there is a genuine dispute of fact whether BMW knowingly engaged in conduct solely calculated to induce him to refrain from or postpone suing it. Therefore, for the reasons below, each of Plaintiffs' DTPA claims are timely.

The DTPA contains a two-year statute of limitations. TEX. BUS. & COM. CODE § 17.565. Limitations accrues when "the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." *Id.* The "discovery" need not be of the "specific cause of the injury" or "the full extent of it," only the basic facts that would lead a reasonable person to further investigate. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 209, 220 (Tex. 2011). However, juries—not judges—typically decide when a reasonable person would discover a wrong. *See Hooks v. Samson Lone Star, L.P.*, 457 S.W.3d 52, 57 (Tex. 2015).

The evidence supporting Plaintiffs' fraudulent-concealment argument supports their DTPA discovery-rule argument. Although it's true that Plaintiffs learned their vehicles consumed excessive oil more than two years before filing this suit, that alone does not establish that a reasonable person would have then further investigated *at that time*. And there is evidence that suggests a reasonable person would not have discovered the wrong until the date Plaintiffs allege. Each Plaintiff took their vehicle to a BMW dealership and was told this level of oil consumption was normal. BMW further told them just to add more oil and more frequently. Plaintiffs are not mechanics. Although the internet contained many complaints about this engine, "the Court is not persuaded that BMW can avoid liability by pointing out that its customers should have combed

through internet complaints to discover potential defects . . . ." *Baker v. BMW of N. Am., LLC*, No.20-274 , 2021 WL 1577837, at *3 (E.D. La. Apr. 22, 2021). Accordingly, there are genuine disputes of fact regarding the date Plaintiffs should have discovered the wrong. If Plaintiffs are believed, this pushes the accrual of the DTPA actions to the following dates: Mize, August 2016; Pritchett, January 2018; and Smith, Summer of 2017.

Applying the discovery rule saves Pritchett and Smith from limitations, but Mize's case still falls five months short without any additional help. The DTPA gives him that help. Under the DTPA's limitations section, the "period of limitation provided in this section may be extended for a period of 180 days if the plaintiff proves that failure to timely commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the plaintiff to refrain from or postpone the commencement of the action." TEX. BUS. & COM. CODE § 17.565. The Court has already determined there is a genuine dispute of fact on this question. Tacking on six months to Mize's limitations extends the deadline to February 2019. Accordingly, Mize's action is timely by about one month.

For these reasons, the Court concludes that Plaintiffs' DTPA claims are timely.

**4.    Economic-Loss Rule**

Last, BMW agues that the economic-loss rule bars Plaintiffs' DTPA claims. The Court concludes that the rule is inapplicable here because BMW's duty to market and sell non-defective vehicles arises from a source outside of the warranty contract and because the DTPA provides different remedies than the warranty contract.

Generally, the economic-loss rule precludes tort liability when the alleged damages are only the economic losses resulting from a breach of contract. *LAN/STV v. Martin K. Eby Const. Co., Inc.*, 435 S.W.3d 234, 235 (Tex. 2014). But "the rule is not generally applicable in every

situation; it allows recovery of economic damages in tort, or not, according to its underlying principles." *Id.* Here, those principles dictate that the rule is inapplicable.

Two relevant principles defining the economic-loss rule's scope are the source of duty and nature of the remedy. *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011). For the first principle, the Court uncovers the source of the legal duty. *McCaig v. Wells Fargo Bank, N.A.*, 788 F.3d 463, 474–75 (5th Cir. 2015) (citing *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)). Sometimes, a single action may breach both a contractual duty and an independent legal duty. *McCaig*, 788 F.3d at 474–75. "Thus, a party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014). For the second principle, statutory and common-law remedies may differ in significant ways from the contractual remedies. This also supports the imposition of tort liability.

In this case, both principles push BMW's actions outside the economic-loss rule's scope. First, the DTPA establishes legal duties independent of any contractual promise. *See Harris*, 2020 WL 7081808 at *7 (citing *SCS Builders, Inc. v. Searcy*, 390 S.W.3d 534, 540 (Tex. App.—Eastland 2012, no pet.)). Even pure economic losses can be recovered "when the source of the duty lies outside the contract . . . ." *SCS Builders, Inc.*, 390 S.W.3d at 540. Here the duty arises both from contract and statute. *See id.* at 540–41. Second, the DTPA offers more and different remedies than Plaintiffs' MMWA claims. *Id.* at 541. Both principles persuade the Court that the economic-loss rule does not apply to DTPA claims.

For these reasons, the Court concludes that the economic-loss rule does not apply to Plaintiffs' DTPA claims.

## IV.    **RECOMMENDATION**

After considering Defendant BMW of North America's Motion for Summary Judgment (ECF 69), the United States Magistrate Judge RECOMMENDS to the United States District Judge that BMW's motion be ruled on as follows:

- DENIED regarding Mize's and Smith's MMWA claims;

- GRANTED regarding Pritchett's MMWA claims;

- GRANTED regarding Plaintiffs' class-action tolling argument on the MMWA claims;

- DENIED regarding Plaintiffs' express-warranty claims;

- DENIED regarding Plaintiffs' DTPA claims.

## V.    **INSTRUCTION FOR SERVICE**

The United States District Clerk is directed to send a copy of this Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED October 1, 2021.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * **NOTICE OF RIGHT TO OBJECT** *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings,

Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), as recognized in *ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).